In re the Marriage of Dorwyn Craig
COLLIER, Appellant–
Respondent

v.

Anne C. COLLIER, Appellee–Petitioner.

No. 02A03–9709–CV–311.

Court of Appeals of Indiana.

April 30, 1998.

Rehearing Denied June 25, 1998.

David K. Hawk, Hark, Haynie, Gallmeyer & Chickedantz, Fort Wayne, for Appellant–Respondent.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee–Petitioner.

## OPINION

HOFFMAN, Judge.

Appellant-respondent Dorwyn Craig Collier appeals the trial court's child support modification order which increased the amount of his child support obligation, made the increase retroactive to the date the modification petition was filed, and found he owed a child support arrearage of $15,134.12. In this post-divorce proceeding, the trial court also issued an order precluding appellee-petitioner Anne C. Collier from being represented by the Allen County prosecutor. She cross-appeals the order, as well as the trial court's judgment precluding her from collecting the arrearage judgment in any manner other than the weekly installments ordered by the trial court. The facts relevant to the appeal are presented below.

Dorwyn Craig Collier (Father) and appellee-petitioner Anne C. Collier (n.k.a. Anne C. Fremion) (Mother) were divorced on June 22, 1987. Pursuant to the decree, Mother was awarded custody of the parties' minor child, Katherine Alison Collier; Father was ordered to pay $50 per week for child support.

After the marriage was dissolved, Father returned to college, obtained his bachelor degree, and eventually completed medical school. In pursuit of the medical degree, Father incurred over $100,000 in debt through school loans. In 1994, Father remarried. A child, Alexandria L. Collier, was born of Father's second marriage on March 31, 1995.

On January 29, 1990, Mother executed an Assignment for Collection for Persons Not Receiving Public Assistance, in conjunction with an Application for Title IV–D Child Support Services to obtain legal and administrative assistance in collecting child support. Mother neither applied for nor received federal financial assistance. On January 27, 1995, the State of Indiana filed a motion to intervene "request[ing] permission to intervene herein in so far as support matters are concerned by virtue of Assignment of Rights to support executed as part of [Mother's] Application for Assistance to Families with Dependent Children ... pursuant to Title IV–D of the Social Security Act." The motion was granted.

That same day, Mother, with the assistance of an Allen County prosecuting attorney, filed a petition for the modification of support. Father, on February 28, 1995, filed a motion to vacate the order permitting intervention, alleging that the State had no interest in the proceeding. Following a hearing held on April 21, 1995, the trial court vacated its previous order permitting the intervention and disqualified the prosecuting attorney's office from representing Mother. As a part of the order, the trial court directed Father's counsel to "communicate within fifteen (15) days with [Mother], who represents herself *pro se,* to set a hearing" to consider the issues raised by Mother in her child support modification petition.

On August 31, 1995, the State filed a motion to correct error alleging that the trial court abused its discretion in denying the State the right to intervene in the cause. On October 26, 1995, the State filed its praecipe. However, on the State's motion, the appeal was dismissed by this Court on February 27, 1996.

On May 3, 1996, the State filed a request for hearing on the petition to modify child support. On July 3, 1996, Father filed an objection to the trial setting, alleging that the State "is without authority to intervene in this case through the Prosecuting Attorney of Allen County," and a motion for continuance. The objection and the motion were subsequently denied.

On July 22, 1996, Mother's private counsel entered an appearance and filed a motion for attorney's fees. On September 25, 1996 and November 25, 1996, the trial court conducted a hearing on the issues raised by Mother's child support modification petition. On February 6, 1997, the trial court entered its order on the petition which reads as follows:

> On November 25, 1996 the parties, in person and by counsel, were present for the continuation of the hearing commenced September 25, 1996 as to modification of support.
>
> Findings of Fact:

1. Respondent has a child Alexandra [sic] L. Collier born March 31, 1995.

2. Respondent's income for the purposes of January 27, 1995 through December 31, 1995 was $116,173 per year (1994 1040 line 22 less line 25, Petitioner's Exhibit 1). For the purposes of said time period, child support worksheet weekly gross income line 1 was $2,089 ($2,234 × 93.5%).

3. Petitioner's income for the purposes of January 27, 1995 through December 31, 1995 was $540 per week (Petitioner's Exhibit 4).

4. Respondent's income for the purposes of January 1, 1996 through November 25, 1996 was $83,622 per year (50 × $2,200 per week having deducted two weeks for continuing education less 1995 1040 Schedule C line 28 expenses [Petitioner's Exhibit 3] and less one half of self-employment taxes). For the purposes of such time period, child support worksheet weekly gross income was $1,503 ($1,608 × 93.5%).

5. [Petitioner's] income for the purposes of January 1, 1996 through November 25, 1996 was $560 per week (Petitioner's Exhibit 6).

As of November 25, 1996, there was a child support arrearage of $15,134.12 owed to Petitioner from Respondent. For the period January 27, 1995 through December 31, 1995 child support of $11,181.12 was payable (48 × 232.94) (see Attachment 1) and for January 1, 1996 through November 25, 1996 child support of $9,353.00 was payable (47 × $199.00) (see Attachment 2). Respondent paid $5,400.00 during the period January 27, 1995 through November 25, 1996 (see Attachment 3). Present child support continues at $199 per week from November 25, 1996. The first $846.00 of any uninsured expense at any time shall be paid by Petitioner; any uninsured expense in excess of said amount shall be paid 73.4% by Respondent and 26.6% by Petitioner.

The child support arrearage shall be paid at the rate of not less than $200.00 per week commencing when Katherine Alison Collier is emancipated. Respondent shall pay $1,500.00 toward Petitioner's attorney fees on or before August 1, 1997.

Both parties, subsequently, filed motions to correct error. Mother's motion argued that the trial court erred in limiting payment of the arrearage to $200 per week and in failing to award interest on the arrearage. Father's motion argued that the trial court erred in calculating the arrearage and the current support; failing to award to Father the child's tax exemption; and in ordering Father to pay $1,500 toward Mother's attorney fees. The trial court denied both motions. Thereafter, Father initiated the instant appeal.

On appeal, Father raises the following issues:

(1) whether the trial court abused its discretion in establishing retroactive support delinquency and an arrearage against Father; and

(2) whether the trial court erred in awarding Mother attorney's fees.

On cross-appeal, the State raises the following issues:

(1) whether the trial court erred in ruling that the Allen County Prosecutor could not represent Mother in the child support modification case; and

(2) whether the trial court erred in limiting payment on the arrearage to $200 per week.

■ Father first argues that the trial court abused its discretion in making his support order retroactive to the date of filing. Father maintains that the retroactive modification, which effective date was more than 20 months prior to the first hearing date, is clearly erroneous and against the logic and effect of the facts and circumstances before the trial court. According to Father, Mother intentionally delayed the modification hearing by insisting on utilizing the prosecutor to represent her in the proceeding and is receiving a windfall as a result of the delay.

■ While a court may not retroactively reduce, modify, or vacate a support order, it is empowered to make a discretionary modification relating back to the filing date of the

petition to modify. *Haverstock v. Haverstock,* 599 N.E.2d 617, 621 (Ind.Ct.App.1992). The needs of the children, upon which the court focuses in determining whether a substantial and continuing change of circumstances has occurred, are examined as of the date the petition is filed. *Kruse v. Kruse,* 464 N.E.2d 934, 939 (Ind.Ct.App.1984), *trans. denied.* If the court finds that a modification of child support is justified, then the court has discretion to order payments to be effective from that date. *Id.* To grant modification of support only from the date of the court's order detracts from the purposes of the changed circumstances rule and serves to encourage and benefit dilatory tactics. *Id.*

Here, Mother, by the Allen County prosecutor, filed her petition for modification of child support on January 25, 1995. As part of the trial court's order vacating its previous order allowing the prosecutor to represent Mother, the trial court directed Father's counsel to communicate within 15 days with Mother to set a hearing for consideration of the issues raised in the modification petition. Pursuant to the order, Father's counsel sent a letter to Mother inviting Mother to contact Father's counsel. Relying on advice from the Allen County prosecutor, Mother did not respond to the letter. Instead, between August 1995 and May 1996, the State filed various motions appealing the trial court's decision prohibiting intervention.

In July of 1996, Mother retained private counsel. The hearing on the petition commenced on September 25, 1996 and concluded on November 25, 1996. In its February 6, 1997 order, the trial court modified Father's child support and made the modification retroactive to the date of filing.

In its order, the trial court found that Father's weekly gross income was approximately $2,000 in 1995 and $1,500 in 1996. The trial court further found that Mother's weekly gross income was $540 in 1995 and $560 in 1996. Given the trial court's findings, and the fact that the needs of Father and Mother's child are determined as of the date of the petition, we cannot say that the trial court abused its discretion in ordering the child support modification effective as of the date the petition to modify was filed.

Father next argues that the trial court erred in calculating the support arrearage in that it improperly considered his voluntary extra income and failed to consider his medical school loan repayments.

■ The trial court's modification of a support order will only be reversed for an abuse of discretion, that is, only when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Mullin v. Mullin,* 634 N.E.2d 1340, 1341 (Ind.Ct.App.1994). In determining whether the trial court abused its discretion in modifying a child support order, the court of review does not weigh the evidence or judge the credibility of the witnesses but, rather, considers only that evidence most favorable to the judgment, together with the reasonable inferences which can be drawn therefrom, and if from that viewpoint, there is substantial evidence to support the finding of the trial court, it will not be disturbed even though the court of review may have reached a different conclusion had it been the trier of fact. *Id.*

■ Neither party requested the trial court to enter findings under Ind.Trial Rule 52. Nevertheless, the trial court entered findings gratuitously. In such cases, the trial court's findings control only as to the issues they cover, and a general judgment will control as to issues upon which the court has not found. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* Superfluous findings, even if erroneous, cannot provide a basis for reversible error. *Id.* at 1341–42.

■ Father asserts that the trial court erred in calculating his support arrearage because it improperly considered his extra income and failed to consider his school loan repayments. The evidence of record reveals that in addition to his full-time employment with Sturgis Hospital, Father joined with other doctors as a self-employed emergency room physician under the business name Sturgis Emergency Room Physicians Associates (SERPA). In 1994, Father earned $84,807 from his salary at Sturgis Hospital and $31,772 from his self-employment through

SERPA; in 1995, Father earned $87,750 from his salary at Sturgis Hospital and $38,723 from his self-employment through SERPA. However, to earn the extra income, Father worked approximately 80 hours per week.

Father does not dispute the trial court's findings that he earned $116,599 in 1994 and $126,473 in 1995. However, Father does take issue with the trial court's utilization of all of his 1994 voluntary extra work to calculate his weekly income. According to Father, the inclusion of all of the voluntary income had the effect of requiring him to work 80-hour weeks to satisfy the child support obligation which is based upon an artificially high income figure.

■ Voluntary extra work is includable in the total income approach taken by the Indiana Child Support Guidelines ("Guidelines"). Ind.Child Support Guideline 3 (Commentary 2.b.). However, where a portion of the income is dependable and a portion is contingent upon the production of the worker, earnings of a business or some other variable, the child support obligation may be based on that portion on which the party can depend. *Id.* Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled. *Id.*

The caveat for basing the child support modification on irregular or nonguaranteed income is explained in the following example:

[I]f an obligor takes a part-time job for the purpose of paying a specific bill arising from a subsequent marriage, modification of the support order to include the full level of income may require that the obligor continue with that employment just to meet an increased support obligation, thereby providing a disincentive to work and improve the living standard of the family.

*Id.* The Commentary further states that judges and practitioners should be innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where articulate reasons justify them.

In the instant case, the facts reveal that for two years, 1994 and 1995, in addition to his full-time employment with the hospital, Father was also self-employed with the SERPA group as a emergency room physician. In 1996, Father's income decreased to $83,622 because he left the full-time hospital job, withdrew from the self-employment group, and began employment that he anticipated would become a partnership in private practice. Under his new employment, Father was employed as a per-hour physician at the rate of $55 per hour.

Based upon these facts, instead of using Father's 1995 income, which totaled $126,473 and included approximately $39,000 from self-employment, to calculate Father's child support obligation for 1995, the trial court used Father's 1994 income which was $116,599 and included approximately $32,000 from self-employment. The trial court based Father's 1996 child support obligation on his new per-hour employment.

The Guidelines specifically encourage trial judges to be innovative when determining child support obligations based upon voluntary extra work. The flexibility inherent in the Guidelines permitted the trial judge in the instant case to base one year of Father's child support arrearage on 1994 income, which included the voluntary extra work income, and one year on the 1996 income, which did not include any extra work income. In so doing, we find that the trial court was able to strike the balance between basing the arrearage on dependable income and providing Father and Mother's child with the support she would have benefitted from had the family remained in tact. No abuse of discretion occurred and we find no error.

Father also asserts that the trial court erred in calculating the support arrearage because it compared Mother's 1995 income with Father's 1994 income. However, the findings show that in order to correctly calculate Father's support obligation, given the fact that Father had two years of voluntary extra work income which greatly increased his weekly income, it was necessary for the trial court to use Father's 1994 income to determine his weekly income for 1995. The trial court then applied Mother's 1995 income

to determine Father's modified child support obligation. We do not find that the trial court's decision is against the logic and effect of the facts and circumstances of the instant case. No error occurred here.

Father further argues that the trial court miscalculated his actual earnings for 1996. According to Father, the trial court's calculation is erroneous because there are no deductions for Father's medical school loan repayments, and the calculation includes three months of the voluntary extra employment income Father earned as part of SERPA. Father, however, is mistaken.

During the hearing, Stephen Vear, Father's tax professional, testified that, at the time of the hearing, Father was earning $55 per hour and working 40 hours per week. From this testimony, the trial court determined that Father was earning $2,200 per week. The trial court then converted Father's weekly income into an annual figure, subtracted Father's business expenses and one-half his self-employment tax, multiplied the figure by 93.5% because of Father's after-born child, and determined that Father's child support weekly gross income was $1,503. The trial court's computations are supported by the evidence. In reviewing the trial court's calculations, we do not find that they included any of Father's voluntary extra income from SERPA.

Likewise, the trial court did not err in failing to deduct Father's medical school loan repayments. The testimony at the hearing revealed that despite Father's substantial loan obligations, Father and his second wife purchased a $300,000 house and a new car. The couple also budgeted $4000 per year for vacations, $2000 per year for gifts, and $2,400 per year for dining out at restaurants. Father's expenditures and income suggested strongly that he could afford to contribute more than $50 per week toward supporting his daughter. Whether to deduct Father's medical school loan payments from his weekly gross income is a matter for the trial court's discretion. Viewing all of the evidence before it, the trial court decided not to allow the deduction. We do not find this decision to be an abuse of discretion.

Father next argues that the trial court erred in ordering him to pay $1500 of Mother's attorney's fees. We review an award of attorney's fees for an abuse of discretion. *Truman v. Truman,* 642 N.E.2d 230, 238 (Ind.Ct.App.1994). The trial court has broad discretion in assessing attorney's fees and reversal is warranted only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *In re Marriage of Tearman,* 617 N.E.2d 974, 978 (Ind.Ct.App.1993).

In assessing attorney's fees, the court may consider such factors as the resources of the parties, the relative earning ability, and the ability to engage in gainful employment. *Id.* However, the court need not give reasons for its determination. *Id.*

Here, the record reveals that at the time of the hearing, Father was employed as a $55 per hour physician. His weekly gross income was approximately $2,200. Mother, at the time of the hearing, was employed as a surgical technician earning approximately $540 per week. Considering this disparity in income, we cannot say that the trial court abused its discretion in awarding Mother attorney's fees.

On cross appeal, the State first argues that the trial court improperly interpreted state and federal law in determining that the Allen County prosecutor could not represent Mother in her child support modification case. Father contends that the trial court's ruling was correct in that the prosecutor lacked authority to prosecute the action.

IND.CODE § 12–17–2–18 (1993 Ed.) provides in pertinent part:

(a) ... The bureau shall contract with:

(1) a prosecuting attorney; ...

in each judicial circuit to undertake activities required to be performed under Title IV–D of the federal Social Security Act (42 U.S.C. 651), including determination of paternity, determination and enforcement of child support, activities under the Uniform Reciprocal Enforcement of Support Act (IC 31–2–1), and if the contract is with a

prosecuting attorney, prosecutions of welfare fraud.

Under IND.CODE § 12–17–2–22 (1993 Ed.), the State is required to provide such support-related duties of the bureau as collecting support payments; assisting in obtaining support orders when there is no existing order; and assisting mothers of children born out of wedlock in establishing paternity and obtaining a support order, to individuals other than recipients or applicants for AFDC upon application for the services and payment of an application fee set by the Title IV–D agency. *See* IND.CODE § 12–17–2–21 (1993 Ed.).[1]

Based upon IND.CODE § 12–17–2–21, the trial court determined that the prosecutor was without authority to intervene because the case did not fall within the bureau services listed therein. In reviewing IND. CODE § 12–17–2–21, it appears that the legislature intended to allow the State to intervene only in instances where assistance is needed collecting support and establishing paternity.

In the instant case, Mother initiated an action to modify the existing child support order. However, IND.CODE § 12–17–2–21 authorizes intervention and representation only after the modification has been heard and a support order has been entered by the trial court. At that point, the State may intervene and provide assistance to the party in the collection of the child support, whether or not the party is receiving AFDC. *See* IND.CODE §§ 12–17–2–21(a)(1) and 12–17–2–22. IND.CODE § 12–17–2–21 has not provided the State with the authority to intervene and represent a party in the initiation of an action to modify an existing child support order. As such, the trial court did not err in ruling that the Allen County prosecutor could not represent Mother in her child support modification case.

The State's second argument is that the trial court erred in limiting Father's payment of the $15,134.12 arrearage to $200 per week. According to the State, the trial court lacked authority to place limitations on the arrearage payments. However, we find that given the facts and circumstances of the instant case, the trial court was well within its discretionary power to set that payment amount. *See In re Marriage of Wiley*, 444 N.E.2d 315, 320 (Ind.Ct.App.1983) (trial court did not abuse its discretion in ordering deferred payments of $50 per week on support arrearage as payment was a significant amount and did not invite further lapses by husband).

Payment of Father's support arrearage is a legitimate goal. In light of Father's current financial situation, this goal is best served by payments of $200 per week which are deferred until after Father and Mother's child is emancipated; $200 is a significant amount and yet the deferment of the payment protects against possible lapses by Father. It should also be noted that in the meantime, present child support continues at $199 per week. We, therefore, hold that the trial court's limitation on Father's arrearage payments was not an abuse of discretion.

The State also contends that the trial court erred in declining to award interest on the arrearage. IND.CODE § 31–1–11.5–12(g) (1996 Supp.) states in pertinent part that "[t]he court may, upon a request by the person entitled to receive child support payments, order interest charges of not more than one and one half percent (1½) per month to be paid on any delinquent child support payment." This statute grants the trial court discretion to award interest on support

---

1. At the time the trial court vacated its original order allowing the prosecutor to intervene, IND. CODE § 12–17–2–21 read in pertinent part:

    (a) The bureau shall do the following:
    (1) Collect support payments when the payments have been assigned to the state by the application for assistance under AFDC.
    (2) Assist in obtaining a support order when there is no existing order and assistance is sought.

    (3) Assist mothers of children born out of wedlock in establishing paternity and obtaining a support order when the mother has applied for assistance.
    IND.CODE § 12–17–2–22 provides that:
    All the services provided in sections 16 [Parent locator service] and 21 of this chapter must be available to individuals other than recipients or applicants for AFDC upon application for the services accompanied by the payment of an application fee set by the Title IV–D agency.

arrearage and at what rate. *In re Marriage of Johnson*, 625 N.E.2d 1331, 1333 (Ind.Ct. App.1993). Here, after reviewing all of the evidence before it, the trial court determined that no interest should be awarded. This decision was well within the trial court's discretion. We will not substitute our judgment for that of the trial court.

The trial court correctly calculated the support arrearage, awarded Mother attorney's fees, determined that the Allen County prosecutor could not represent Mother in a support modification case, and limited Father's arrearage payment. As such, the judgment is in all respects affirmed.

Affirmed.

RUCKER and BAILEY, JJ., concur.