In re the Marriage of Carthol
B. HOLMES, Appellant–
Respondent,

v.

Janice HOLMES, Appellee–Petitioner.

No. 09A02–9906–CV–422.

Court of Appeals of Indiana.

April 19, 2000.

Jim Brugh, Logansport, Indiana, Attorney for Appellant.

Raymond C. Bowyer, Walton, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Carthol B. Holmes (Carthol), appeals the trial court's order awarding Janice Holmes (Janice), $11,090.13 in child support arrearages and $9,378.75 in attorney fees.

We affirm.

Carthol presents nine issues for our review which we consolidate, reorder, and restate as follows:

(1) Whether the trial court erred in conducting a new hearing upon a remand

which instructed it to make additional findings of fact;

(2) Whether the trial court erred in not transferring the case to the trial court judge who originally heard the matter, even though that judge had been defeated in an election;

(3) Whether the trial court erred in finding that Carthol received actual notice of the September 1991 hearing;

(4) Whether the trial court erred in modifying child support to $88 per week when Carthol's income did not support that modification;

(5) Whether the trial court erred in awarding Janice $11,090.13 in child support arrearage; and

(6) Whether the trial court erred in awarding Janice $9,378.75 in attorney fees.

The facts reveal that Carthol and Janice were divorced on November 14, 1978, in a Michigan trial court. Janice received custody of their three children, who at the time were fifteen, fourteen, and five years old. The Michigan trial court created a progressive child support payment schedule, contemplating each of the children's eventual emancipation. The court ordered Carthol to pay $76 per week so long as all three children were eligible for child support, $64 per week for two children, and $38 per week for one child. Janice also received the marital residence. The court determined that Carthol's share of equity in the house was $11,500. To compensate Carthol for his share in the equity of the marital residence, the court ordered Janice to either obtain a second mortgage on the marital home for $11,500 or pay Carthol $100 per month plus six percent interest until the total was paid. Janice neither obtained a second mortgage nor paid Carthol $100 per month.

Subsequently, Carthol moved to Indiana. Janice filed a Uniform Reciprocal Enforce-ment of Support Act [1] (URESA) petition in Cass Circuit Court in Indiana. On June 11, 1979, the Indiana trial court ordered Carthol to pay $25 per week per child for child support until each child turned eighteen years old or graduated from high school, whichever occurred later. The Indiana trial court, after recognizing the Michigan trial court's order requiring Janice to pay Carthol for the equity of the marital residence, gave Carthol credit for the equity in the home towards his child support obligation.

On July 2, 1991, Janice filed a petition in the Michigan trial court to increase Carthol's child support for the one remaining child who had turned eighteen, but had not graduated from high school. In September of 1991, the court conducted a hearing, and in October 1991, modified Carthol's child support from $38 to $88 per week.

On November 1, 1993, Carthol petitioned the Michigan trial court to transfer its case to the Indiana trial court and consolidate it with the Indiana trial court action because, at this time, both Carthol and Janice were living in Indiana. On February 7, 1994, the Michigan trial court granted Carthol's request for transfer and consolidation. The Indiana trial court received the case, and on April 4, 1994, Carthol petitioned the Indiana trial court to determine his child support arrearage.

On May 24, 1994, the court conducted a hearing, during which Carthol contested the October 1991 Michigan court order modifying his support upon grounds that he did not receive actual notice of the September 1991 hearing. Carthol asserted that he received notice of an earlier scheduled hearing in Michigan, but it was cancelled. He contended that he did not receive notice of the hearing which had been rescheduled several times. Janice countered that she had mailed notices to Carthol by certified mail.

1. For current act, see Uniform Interstate Family Support Act, I.C. 31–18–1–1 et seq.

(Burns Code Ed. Repl.1997).

The Indiana court requested that the parties file briefs on the issue of notice. Along with his brief on June 24, 1994, Carthol filed an Ind. Trial Rule 60(B) motion for relief from the October 1991 Michigan order. The court granted Carthol's motion on June 28, 1994. In its order, the court held that the modification in child support from $38 to $88 per week was void due to Michigan precedent cited by Carthol with respect to notice. The court instructed the parties to either negotiate an agreement on the amount of child support arrearage owed by Carthol or to file briefs and proposed findings on the issue.

The parties could not agree upon the amount of arrearage, and on July 28, 1994, the Indiana court determined that Carthol owed $1,836.77. This amount was calculated from the Indiana trial court finding in the URESA action on June 11, 1979, which determined Carthol's child support to be $25 per week per child. Janice also filed a Motion to Correct Errors, in which she asked the court to either vacate its order and calculate the arrearage based upon the Michigan trial court modification order in October of 1991, or alternatively, to open the judgment pursuant to Ind. Trial Rule 52(B) and take testimony from the referee who entered the Michigan order. On August 19, 1994, the court denied Janice's motion.

Janice appealed to this court. On April 15, 1996, in an unpublished memorandum decision, a three-judge panel of this court held that the Indiana trial court failed to make a specific finding containing relevant facts and a statement of law whether Carthol received actual notice of the Michigan modification hearing, and remanded the case back to the trial court to enter additional findings of fact. *See Holmes v. Holmes* (April 15, 1996) Ind.App., 09A02–9412–CV–729, 664 N.E.2d 414.

Upon remand, on June 21, 1996, Carthol petitioned the trial court to make specific findings. Instead, on December 30, 1997, the court set the issue for a hearing. On March 3, 1997, Carthol petitioned to have

the matter heard before the same judge who had heard the matter at trial, Judge Donald E.C. Leicht (Leicht). Judge Leicht had been defeated by Judge Julian L. Ridlen (Ridlen) in a general election. On March 20, 1997, Judge Ridlen conducted a hearing with respect to his jurisdiction and upon the remand issue. On April 3, 1997, Judge Ridlen entered an order that he, not Judge Leicht, had jurisdiction over the case because Carthol had submitted to his jurisdiction before filing his objection. The court further determined that Carthol's motion to have the matter transferred to Judge Leicht was not timely made. On April 8, 1997, Carthol objected to the reopening of the record, which the court overruled.

On September 2, 1997, the court heard testimony on the issue of notice. A deposition from Ernest M. Joseph (Joseph), the referee in the Michigan case, was later added to the record. Joseph testified that the Michigan trial court sent notice of the September 1991 hearing to Janice and Carthol. Janice contended, therefore, that it was not dispositive whether she had mailed notice, but whether Carthol had received notice. Janice concluded, with respect to this hearing, that Carthol received notice from the court.

On March 31, 1998, the trial court determined that Carthol did not receive actual notice of the modification hearing in Michigan. On April 27, 1998, Janice filed a Motion to Correct Errors contending that the evidence before the court proved that Carthol had notice of the September 1991 hearing. Janice maintained that she had offered receipts of certified mail signed by Carthol for other hearings at which he did not appear and Carthol had also testified that he received a notice of a September hearing. Janice also supported her assertion with Joseph's testimony that the Michigan trial court mailed notice to Carthol for the hearing and no other hearing was conducted in September. In the motion, Janice also asserted that Carthol still owed a child support arrearage.

On July 10, 1998, the court conducted a hearing on the Motion to Correct Errors. On August 10, 1998, because the court had not yet ruled, Janice filed a motion for the court to rule or to extend time to rule. The court extended its time to rule. On September 9, 1998, Janice made the same motion when the court had still not ruled. The court petitioned to have its time to rule extended, and the Indiana Supreme Court granted the extension.

On October 8, 1998, the trial court granted Janice's Motion to Correct Errors. The court reversed its March 31, 1998 order, concluding that Carthol did receive actual notice of the September 1991 modification hearing in Michigan. The court specifically observed that Carthol's testimony confirmed that he appeared at a hearing in the Michigan trial court in September of 1991, that the September hearing was the only hearing scheduled and conducted that month, and that Joseph's testimony established that Carthol had notice of the hearing. The court also noted that the Michigan trial court sent the notice of the September hearing to the same address where Carthol had signed receipts of certified mail previously mailed by Janice. The court gave the parties thirty days to submit briefs on the issue of child support arrearage. On November 18, 1998, the court entered its order with respect to arrearage and found that Carthol owed $11,090.13.

On December 18, 1998, Carthol filed a Motion to Correct Errors, and on December 29, 1998, he filed a Motion for Revision of the Order. On April 16, 1999, after a hearing, the court denied Carthol's motions and awarded Janice $9,378.75 in attorney fees. On May 27, 1999, the court made the arrearage amount determined on November 18, 1998, to be effective *nunc pro tunc* to July 26, 1994.

### I. New Trial Upon Remand

■ Carthol first contends that the trial court erred in conducting a new trial upon remand, when we instructed the trial court "to enter additional findings of fact." Record at 25. *Holmes, supra*, slip op. at 6. Judge Ridlen conducted a hearing on September 2, 1997, in which the parties testified, and he reopened the record to include Michigan referee Joseph's deposition before issuing his findings of fact and conclusions of law.

Ind. Trial Rule 63(A) allows a successor judge to perform any post-trial duties which the judge who conducted the trial or hearing could have performed. The rule provides that "if [a judge] is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial or new hearing, in whole or in part." This rule contemplates that the successor judge may not feel comfortable relying solely upon the transcript of evidence from the trial to render a decision. *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978) 175 Ind.App. 416, 420–21, 372 N.E.2d 742, 746. There are instances in which the successor judge's failure to preside at trial renders him ill-equipped to perform the functions of the regular trial judge. *Id.* In these instances, the discretion to conduct a new hearing or trial "is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable." *Id.*

Here, Judge Ridlen allowed the parties to testify and opened the record to include the deposition of the referee who handled the case in Michigan. The referee's deposition was relevant to the issue of notice, upon which the trial court was instructed to enter additional findings. Judge Ridlen, not being the trial court judge who heard the evidence at the first hearing, may not have felt fully informed after reviewing just the record of this procedurally complicated case. Further, in the interest of efficiency, Judge Ridlen may have found it more expedient to have the parties testify than to attempt to research and delineate answers to his questions from a long court record. Judge Ridlen, therefore,

acted within his discretion in conducting a new hearing.[2]

## II. Denial of Motion to Transfer to Original Judge

■ Carthol also asserts that Judge Ridlen erred in failing to transfer the case to Judge Leicht, before whom the original hearing was held. Carthol relies upon T.R. 63(A) which states:

"[t]he judge who presides at the trial of a cause or a hearing at which evidence is received shall, if available, hear motions and make all decisions and rulings required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded."

Carthol insists that Judge Leicht was available to hear the case upon remand, even though he had been defeated in a general election. The idea behind Carthol's argument centers around the trial judge being the best person to rule upon a post-trial motion, and Judge Leicht should have continuing jurisdiction as if he had been appointed as a special judge. *See State v. Smith* (1973) 260 Ind. 555, 558, 297 N.E.2d 809, 812.

Janice, however, maintains that Carthol waived his objection to Judge Ridlen's jurisdiction to hear the case when he submitted motions to Judge Ridlen without petitioning to transfer the case to Judge Leicht. Judge Ridlen took office January 1, 1995. Before the case was even remanded to the trial court for additional findings on June 15, 1995, Janice petitioned the trial court for appellate attorney fees. On June 27, 1995, Carthol responded with a motion to dismiss Janice's request for fees. Judge Ridlen conducted a hearing upon this matter, and Carthol at no time made an objection to Judge Ridlen's

jurisdiction. On June 21, 1996, Carthol petitioned the court to make the specific findings requested upon remand. Carthol did not challenge Judge Ridlen's jurisdiction until March 3, 1997, when Carthol petitioned to have the matter transferred to Judge Leicht. Judge Ridlen denied Carthol's motion, and held that his objection was not timely made.

We first note that no defect exists in the trial court's subject matter jurisdiction over this matter. Instead, Carthol challenges this particular judge's authority to hear this case upon remand. We recognize the "shall, if available" language in T.R. 63(A) carries with it the message that if the original trial judge is available, he must hear post-trial motions. The use of the word "shall" in T.R. 63(A), however, must also contemplate bringing the matter to the new judge's attention in a timely manner. Carthol should have made his objection at his earliest opportunity, which in this case was with the motion to dismiss Janice's claim for attorney fees.

Because we have held that Carthol did not timely object to Judge Ridlen's jurisdiction, we need not address whether a judge's defeat in a general election renders him unavailable for purposes of T.R. 63(A). *See Meade v. State* (1992) Ind.App., 588 N.E.2d 521, 522–23 (refusing to address general election issue when case decided upon other grounds).

## III. Notice of Support Modification Hearing

■ Carthol next maintains that he did not receive actual notice of the September 1991 modification hearing conducted in Michigan. He supports this assertion with the Michigan precedent of *Laird v. Rinckey* (1963) 371 Mich. 96, 123 N.W.2d 243,

**2.** Given the circumstance of "a changing of the guard" with respect to replacement of the presiding judge of the court, we hold that such constitutes an exception to the rule enunciated in *Jordan v. State* (1994) Ind.App., 631 N.E.2d 537, quoting *Town of Flora v. Indiana Serv. Corp.* (1944), 222 Ind. 253, 258,

53 N.E.2d 161: " 'When a judgment has been reviewed by an appellate court and the cause remanded, it is the duty of the lower court to comply with the mandate and to obey the directions therein contained without variation.' "

which held that plaintiffs were denied their due process rights when they did not receive actual notice of a new trial date. Carthol testified that he appeared in Michigan to attend a hearing before another judge, but was told the hearing had been cancelled due to the judge's illness.

Despite Carthol's assertion, the record indicates that he did receive notice of the September 1991 hearing. First of all, Carthol's own testimony, given at the May 24, 1994 hearing, reflected that he received notice from the Michigan trial court for a hearing scheduled in September of 1991. Carthol testified that when he went to the court, he was told the judge was sick, but testimony from Michigan referee Joseph indicates that only one hearing was scheduled and conducted in September of 1991. Joseph further testified that the Michigan trial court sent notice to both Janice and Carthol. The notice sent by the Michigan trial court was mailed to the same address where Janice had mailed two notices for previously scheduled hearings. These two notices were signed by Carthol, acknowledging his receipt of them.

The trial court concluded that Carthol's testimony, along with the notice mailed by the Michigan trial court and the signed receipts, established that Carthol had notice of the September 1991 hearing. We cannot say that, as a matter of law, the court erred in its conclusion.

### IV. Modification of Child Support

■ Carthol maintains that the Michigan order which modified his child support from $38 to $88 per week was erroneous. This order was entered in October of 1991, after the September hearing at which Carthol did not appear. The modified child support amount was calculated from Janice's assertion that Carthol earned $27,000 per year. It is unclear how Janice arrived at this figure, and the referee in the case indicated that Janice did not provide any proof of Carthol's earnings, such as income tax returns or W–2 forms. In addition to not appearing at the hearing, Carthol did not challenge the child support modification order after it was mailed to him at the same address where Carthol received and signed prior receipts of notice.

Carthol eventually challenged the child support modification calculation with evidence that he only earned $18,000 per year based upon his 1990 tax return. This challenge, however, was not made until June 24, 1994, when he filed his brief on the issue of notice. Even at that point, Carthol's challenge dealt more with lack of notice of the modification hearing rather than the amount of income attributed to him in calculating the child support modification. Carthol's challenge did not become apparent until the filing of Joseph's deposition in 1997. In the deposition, Carthol had Joseph calculate what Carthol's child support would have been with yearly earnings of $18,000. Joseph calculated the child support at $48–49 per week.

While it appears from the tax return that Carthol may have earned only $18,000 in 1990 and not $27,000, he failed to timely object to the Michigan trial court's order. Carthol should have attacked the modification order in Michigan, and he may not collaterally attack that order in the Indiana courts at this late time.

### V. Child Support Arrearage

■ Carthol contends that Janice may not raise child support arrearage as an issue after the case has been remanded to the trial court when she did not raise it in the first appeal. He asserts that Janice should have raised the issue as part of her appeal after Judge Leicht determined that Carthol owed $1,836.77 in arrearage. When Janice appealed the trial court's order, this court remanded the case to determine whether Carthol received notice of the 1991 Michigan support modification hearing. Other issues, such as an arrearage determination, were not discussed and depended upon a finding upon remand of whether Carthol had notice of the Michigan modification hearing.

A determination of the exact arrearage amount or whether or not an arrearage even existed was contingent upon a specific finding upon remand that Carthol was given notice of the 1991 Michigan support modification hearing. Any contest with reference to an arrearage could not have arisen until the notice determination was made.

■ Similarly, Carthol maintains that Janice cannot present her challenge to the Indiana URESA order for the first time in her Motion to Correct Errors which was granted and led to this appeal. In her Motion to Correct Errors, Janice designated evidence that Carthol received notice of the Michigan hearing. Janice made reference to the URESA order and calculations apparently based upon it to demonstrate why the court, after finding that Carthol had notice, should instead rely upon the Michigan support modification order for the arrearage calculation.

Janice attacked the validity of the URESA order at this time because the arrearage amount calculated by Judge Leicht in the original trial order, was apparently based, at least in part, upon the child support determination from the URESA order. Judge Leicht evidently relied upon the URESA order for calculations because he also held that Carthol did not have notice of the Michigan modification hearing. Therefore, any calculations made could not be based upon the Michigan order.

When the trial court granted Janice's Motion to Correct Errors, holding that Carthol had notice of the modification hearing, only then did her assertions about the arrearage calculation become relevant. The trial court determined that Carthol owed $11,090.13 in arrearage, based upon the Michigan support modification order.

Carthol maintains that the court was not permitted to change the original arrearage determination because it had to follow the "law of the case." Carthol argues that Indiana follows the law of the case doc-

trine in the "strictest sense" and it "must be followed even when the earlier decision is deemed to be incorrect." Appellant's Brief at 32, citing *Certain Northeast Annexation Area Landowners v. Fort Wayne* (1993) Ind.App., 622 N.E.2d 548, 549, *reh'g denied.*

■ Carthol's mischaracterizes this doctrine. The law of the case generally states that once facts have been established and an appeal has been taken, courts refuse to reopen the issue for discussion. *Landowners, supra,* 622 N.E.2d at 549. It is based upon the rationale that a court will not lightly revisit issues already addressed. *Id.* Despite Carthol's contention, *Landowners* reiterates the principle that the law of the case is a discretionary rule of practice.

■ Here, the URESA order cannot be the law of the case when its validity was not litigated on the first appeal, and did not become relevant until the proceedings upon remand. *See United of Omaha v. Hieber* (1998) Ind.App., 698 N.E.2d 869, 873–74, *modified upon reh'g by* (1998) Ind. App., 701 N.E.2d 622, *trans. denied* (rejecting the argument that the law of the case was that only plan participants and not plan beneficiaries could assert reliance upon an ERISA plan when the appellate court did not consider the issue and the issue did not become relevant until remand). "[Q]uestions not conclusively decided in a prior appeal do not become the law of the case." *Closson Lumber Co. v. Wiseman* (1987) Ind., 507 N.E.2d 974, 977. Thus, it was not error for the trial court to allow Janice to demonstrate why the previous arrearage calculation was inaccurate.

■ Carthol also challenges Judge Ridlen's authority to make a *nunc pro tunc* entry with respect to the child support arrearage. In Judge Ridlen's findings, he concluded that it would be "manifestly unjust" not to correct the arrearage amount made previously by the court under Judge Leicht. Record at 475. Judge Ridlen specifically found that the first cal-

culation of $1,836.77 would result in Carthol only paying about seventeen percent of the actual arrearage amount owed.

A *nunc pro tunc* entry is "defined in law as 'an entry made now of something which was actually previously done, to have effect as of the former date.'" *Edwards v. Edwards* (1999) Ind. App., 709 N.E.2d 1055, 1057 (citations omitted). The purpose of a *nunc pro tunc* entry is to do now what should have been done previously.

In the instant case, Carthol does not specifically contest the arrearage calculations made by Judge Ridlen or Judge Ridlen's finding that it would be "manifestly unjust" to leave the calculation as it was under the previous order. Instead, he just asserts there was no evidence in the previous order that Judge Leicht intended to find a greater arrearage amount than he actually calculated. However, Judge Ridlen's conclusion that upholding Judge Leicht's order would result in Carthol paying only seventeen percent of what he actually owes and his comments regarding injustice support his *nunc pro tunc* entry which ensures that the correct arrearage amount covers the total time when support was owed.[3]

## VI. Attorney Fees

Finally, Carthol alleges that the trial court erred in awarding Janice $9,378.75 in attorney fees. Ind.Code 31–16–11–1(a) (Burns Code Ed. Repl.1997) states that "[t]he court periodically may order a party to pay a reasonable amount for: (1) the cost to the other party of maintaining or defending any proceeding under this chapter. . . ." The trial court has broad discretion in awarding attorney fees, and we will not reverse unless the award is clearly against the logic and effect of the facts and circumstances before the court. *Collier v. Collier* (1998) Ind.

App., 696 N.E.2d 47, 53, *overruled on other grounds by* (1998) Ind., 702 N.E.2d 351.

In assessing attorney fees, the trial court may consider the resources of the parties and their relative earning abilities. *Id.* The trial court may also consider any misconduct by one of the parties which resulted in the other party incurring additional fees. *Meade v. Levett* (1996) Ind. App., 671 N.E.2d 1172, 1179. Other factors, such as the procedural complexity of a case and the difficulty of the issues involved, may be deemed relevant by the court. *Dougherty v. Leavell* (1991) Ind. App., 582 N.E.2d 442, 443. However, a court is not required to give a reason for its decision to award attorney fees. *Collier, supra* at 53.

In the instant case, this complicated litigation initially began with Janice trying to recover child support owed to her. Carthol had not made consistent child support payments since the time of the original divorce decree, and Janice filed an enforcement action. However, the current dispute arose when Carthol petitioned the Indiana trial court to determine his child support arrearage. Because this case stemmed from Carthol not paying child support, the trial court acted within its discretion in awarding Janice attorney fees. This case has grown complicated over time, implicating orders from Michigan and Indiana, involving detailed mathematical computations and resulting in two appeals. The amount of attorney fees awarded is reasonable given the complexity of the case.

The judgment is, in all respects, affirmed.

BAKER, J., and KIRSCH, J., concur.

---

3. We would additionally note that the record contains sufficient written memorialization that the 1994 order of Judge Leicht was clearly erroneous, thereby justifying correction of the error *nunc pro tunc*. *See Edwards, supra.*