Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 15 2014, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STUART T. BENCH**
Bench Law Office
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**LISA M. JOACHIM**
Richard A. Mann, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WARREN LEE, | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 32A04-1404-DR-173 |
| | ) |
| BECKY LEE, | ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-1105-DR-405

**December 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Warren Lee ("Father") appeals from the trial court's order modifying his parenting time, denying his petition to modify child support, denying his petition for contempt, and ordering him to pay Becky Lee's ("Mother") attorney fees. Specifically, Father raises the following restated issues for our review: whether the trial court abused its discretion in 1) modifying parenting time; 2) denying modification of child support payments; 3) failing to hold Mother in contempt; and 4) ordering him to pay Mother's attorney fees. Concluding the trial court did not abuse its discretion in any respect, we affirm.

## Facts and Procedural History

Father and Mother (collectively, "Parents") have one child, B.L., who was nearly four years old at the time Parents' marriage was dissolved. The trial court issued a decree of dissolution on January 27, 2012, approving and incorporating Parents' Parenting Time, Child Support, and Property Settlement Agreement ("the Agreement"). Pursuant to the Agreement, Mother had primary physical custody of B.L., but Parents shared joint legal custody.

Father had parenting time with B.L. on alternating weekends, every Wednesday overnight, and alternating Tuesdays overnight. Parents agreed that the Indiana Parenting Time Guidelines governed parenting time on holidays and during the summer with one exception: Father was entitled to parenting time every Fourth of July and Mother was entitled to parenting time every Memorial Day weekend. The Agreement did not specify how the parenting time provisions would be implemented in practice. Before B.L. turned school age and started kindergarten, whichever Parent had B.L. overnight, dropped her off

2

at daycare the next morning before work. Father also picked up B.L. at daycare on Fridays at 6:00 p.m. and dropped her off at daycare the following Monday morning when he had weekend parenting time.

Pursuant to the Indiana Child Support Guidelines, Parents agreed that Father would pay $182 in weekly child support. This amount was calculated using a child support obligation worksheet, in addition to the parties' income; the weekly cost of daycare; Father's agreement to provide medical, dental, optical, and prescription insurance for B.L.; and Father's annual parenting time, including 120 overnights. No problems arose until June 2013.

In June 2013, just two months before B.L. started kindergarten, Mother decided that B.L. would catch the school bus from her home in the mornings, obviating the need for morning daycare. Father objected to this decision, because it required him to take B.L. to her bus-stop in Mother's neighborhood, rather than to daycare which was on his way to work, and he believed the new arrangement would be inconvenient and could make him late for work if there were school delays. Father also objected to Mother's vacation with B.L. to Holiday World that summer, because Mother did not inform him of her specific travel plans or a means of contact. Father further objected to Mother's failure to tell him after one of B.L.'s dentist appointments that she would need a cavity filled and to Mother's failure to share B.L.'s emergency inhaler to treat her asthma.

Father filed a petition for modification of parenting time and a petition for contempt on August 30, 2013, asking the court to modify the Agreement to reflect Parents' past practice of dropping off B.L. at daycare in the morning and to modify child support to the

extent the court's parenting time modification changed the cost of B.L.'s daycare. Father also asked the court to hold Mother in contempt for failing to comply with the provision of the Agreement that required Mother to share responsibility and authority for making health, educational, and general welfare decisions for B.L.

Mother filed her own petition for modification on October 9, 2013. She asked the court to modify parenting time to accommodate the fact that B.L. had begun kindergarten. Mother claimed that Father had expressed concern over delivering B.L. to Mother's home in order for B.L. to catch the bus before school. Mother also alleged that B.L. needed a routine schedule that would allow her to sleep in the same home during the school week and noted that before-school daycare would not be necessary if B.L. was at her home every night during the school week. Mother also claimed that Father had been inconsistent in providing adequate medical care for B.L. Accordingly, Mother requested that Father be required to bring B.L. home by 7:30 p.m. on alternating Tuesdays and every Wednesday night. Mother further requested the court to award her reasonable attorney fees.

After Mother notified Father that she also wanted him to bring B.L. to her home on Sunday nights by 7:30 p.m., he filed a second petition for modification on January 22, 2014. In that petition, he asked the court to modify the Agreement to reflect Parents' past arrangement, whereby Father would return B.L. on the Monday morning following weekend parenting time.

A hearing was held on all the petitions on January 31, 2014, at which Father and Mother both testified and offered documentary evidence. On February 3, 2014, the court entered an order denying Father's petitions in all respects and granting Mother's petition

4

for modification.  Father was ordered to pay Mother's attorney fees in the sum of $1,400.

Father then filed a motion to correct error, which the trial court denied, and Father was

ordered to pay an additional $750 in Mother's attorney fees.  Father now appeals.

<u>Discussion and Decision</u>

I.  Modification of Parenting Time and Child Support

A.  Standard of Review

Modifications of child custody, parenting time, and child support are all reviewed for abuse of discretion.  We grant latitude and deference to our trial judges in family law matters.  We consider the [sic] only the evidence favorable to the judgment and the inferences flowing therefrom.  We do not reweigh the evidence or assess witness credibility.

The trial court entered findings of fact and conclusions thereon. Pursuant to Indiana Trial Rule 52(A), we do not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Where, as here, the findings and conclusions are entered sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial.

<u>Miller v. Carpenter</u>, 965 N.E.2d 104, 108-09 (Ind. Ct. App. 2012) (citations and quotation

marks omitted).

B.  Modification of Parenting Time[1]

Father challenges the trial court's modification of his parenting time as requested in

Mother's petition. Indiana Code section 31-17-4-2 governs the modification, denial, and

restriction of parenting time rights.  It provides:

---

[1] Father asserts the trial court's order modifying his parenting time leaves extended parenting time unclear. To the extent Father needs clarification, he should request it from the trial court.

The court may modify an order granting or denying parenting time rights <u>whenever modification would serve the best interests of the child</u>. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

(Emphasis added.) Accordingly, the trial court was authorized to modify Father's parenting time as long as it was in the best interests of B.L. <u>See</u> <u>Miller</u>, 965 N.E.2d at 111.[2] "If the record reveals a rational basis for the trial court's determination, there is no abuse of discretion." <u>Meisberger v. Bishop</u>, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014).

B.L. started kindergarten in August 2013. Father acknowledged that change in circumstances, but did not believe it changed B.L.'s best interests or required a modification of parenting time. Because B.L. rides the school bus, Mother had to provide B.L.'s school with one pick-up location for mornings and one drop-off location for afternoons. Instead of having B.L. catch the bus at daycare every morning, Mother believed it was in B.L.'s best interests to catch the bus at home with a parent. Mother had previously explained her position to Father, and he agreed that it made sense for B.L. to be picked up by the school bus at the place where she spends most nights.

Mother was also concerned about B.L.'s well-being. Mother testified that at her house, B.L.'s bed time is 8:00 p.m.; she wakes up at 7:00 a.m.; and she catches the bus at 8:05 a.m. Mother was concerned that Father's parenting time—specifically when B.L.

---

[2] Father argues that the court abused its discretion in modifying parenting time because there was not sufficient evidence to show a substantial change in circumstances justifying modification. Father cites several cases arguing that a substantial change is the appropriate standard. However, those cases address modifications to custody, not parenting time. Whether there has been a substantial change is not the standard for determining whether a parenting time modification is proper. Although both Mother in her petition to modify parenting time and the trial court in its order use the phrase "substantial change," it is clear Mother was arguing the modification was in B.L.'s best interests and the trial court so found. The trial court applied the correct standard, and we will review the finding accordingly.

6

stayed overnight at Father's house before a school day—was preventing B.L. from having a consistent bedtime and wake-up routine, because she was sometimes tired in the mornings. B.L. was taking four different medications for asthma, and Mother was also concerned that Father was administering the wrong medication at night. Mother believed that a modification to Father's parenting time, requiring B.L. to be home by 7:30 p.m. on school nights, would be best for B.L. The trial court agreed and granted Mother's petition for modification of parenting time.

In light of B.L.'s age, her medical needs, the fact that she was now in school, and in the interest of stability and consistency, the trial court did not abuse its discretion in modifying Father's parenting time. See Higginbotham v. Higginbotham, 822 N.E.2d 609, 612-13 (Ind. Ct. App. 2004) (affirming trial court's decision to suspend parenting time in light of child's medical and scholastic needs). Based on the evidence presented at trial, including the testimony of Parents, there was a rational basis for the trial court's determination that a modification of Father's parenting time was in B.L's best interests. See Meisberger, 15 N.E.3d at 656.

To the extent Father contends that his parenting time has been restricted in contravention of Indiana Code section 31-17-4-2, it provides that a "parent's parenting time rights" shall not be restricted "unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." However, Father's parenting time "rights" have not been restricted as contemplated by the statute. Father's parenting time was merely modified, and he still has the "right" to parenting time on most days that were included in the original Agreement. This is not the

type of scenario in which this court has found unlawful restrictions to parenting time rights. See, e.g., Hatmaker v. Hatmaker, 998 N.E.2d 758, 762 (Ind. Ct. App. 2013) (holding supervised visitation to be an unlawful restriction); Barger v. Pate, 831 N.E.2d 758, 763-64 (Ind. Ct. App. 2005) (holding it an unlawful restriction where Father was not entitled to parenting time with one child if his other child was present). In this instance, the court did not abuse its discretion.

## C. Modification of Child Support

Father challenges the trial court's failure to modify his child support obligation. Indiana Code section 31-16-8-1 governs the modification of child support payments. In relevant part, it states:

> [M]odification may be made only:
> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
> (2) upon a showing that:
> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines . . . .

Ind. Code § 31-16-8-1(b). Thus, the Indiana legislature gave trial courts the discretion to modify child support payments as long as either Indiana Code section 31-16-8-1(b)(1) or (b)(2) has been satisfied. "The party seeking the modification bears the burden of establishing that the statutory requirements have been met." Hedrick v. Gilbert, 17 N.E.3d 321, 327 (Ind. Ct. App. 2014).

In considering the modification of Father's child support payments, the trial court calculated Father's recommended child support obligation based on its modification to

8

Father's parenting time, giving him credit for 115 overnights per year[3] and accounting for the decreased cost of daycare. The court's calculation lowered Father's recommended child support obligation to $147 per week, which is a 19.2% decrease from his original weekly child support obligation of $182. Accordingly, the trial court denied the modification based on subsection (b)(2), finding Father had not shown that his child support obligation differed by more than 20% from the amount that would be ordered applying the Indiana Child Support Guidelines.

The trial court's order does not include an analysis under subsection (b)(1), which permits modification of child support obligations when there are "changed circumstances so substantial and continuing as to make the terms unreasonable." Ind. Code § 31-16-8-1(b)(1). Thus, a general judgment standard applies and we may affirm on any theory supported by the evidence. Miller, 965 N.E.2d at 108-09. "[W]hether or not the change in circumstances asserted is so substantial and continuing as to render the prior child support order's terms unreasonable is, at minimum, a mixed question of law and fact." MacLafferty v. MacLafferty, 829 N.E.2d 938, 941 (Ind. 2005) (quotation marks omitted). To the extent it is a question of law, we review it de novo. Id.

Although Father's recommended child support payment has decreased by less than 20%, failing to meet the requirements of subsection (b)(2), he claims that the decrease

---

[3] We note that the trial court's child support worksheet calculation reduced the number of overnights for which Father received credit by five overnights (from 120 to 115). Father argues there is no basis for the trial court's calculation of overnights and seems to imply the trial court may have chosen a number of overnights that would keep his recalculated child support obligation from differing by more than 20% of his current obligation. However, as Mother points out, Father's overnight parenting time, as modified, has decreased by more than five overnights from the original Agreement. Thus, the credit he was given was generous and in reality, the change in the obligation might be considerably less than 19%.

nonetheless meets the requirements of Indiana Code section 31-16-8-1(b)(1). In MacLafferty, our supreme court stated that "it is hard to see the reason the Legislature would have enacted subsection (2) at all if a parent could receive a modification under Subsection (1) where the only changed circumstance alleged would change one parent's payment by less than 20%." 829 N.E.2d at 942. However, the court also noted that "[t]here may be situations where a variety of factors converge to make such a modification permissible under the terms of the statute." Id.

Here, there are a "variety of factors" to consider in determining whether Father's child support obligation is unreasonable. In addition to the decrease in daycare expense, Parents' incomes have both increased more or less proportionately since 2012; B.L. has started kindergarten; and Father's overnight parenting time has decreased. It is also true that the difference between the recommended child support obligation and Father's current obligation is $35 per week, or less than 2% of his weekly pay. In determining the reasonableness of the existing child support order, we consider the fact that Mother changed B.L.'s daycare arrangement and sought to modify Father's parenting time for a legitimate reason. Looking at the situation as a whole, Father has not shown a change in circumstances so substantial and continuing which makes the existing child support order unreasonable. The trial court did not abuse its discretion in failing to modify Father's child support obligation.

## II. Petition for Contempt

Father claims the trial court abused its discretion by failing to hold Mother in contempt for violating the terms of the Agreement. "The determination of whether a party

is in contempt of court is left to the sound discretion of the trial court, and we will reverse only if it has abused its discretion." Hedrick, 17 N.E.3d at 328. "There are two types of contempt: direct and indirect." Id. "Failure to comply with a court order constitutes indirect contempt." Id.; see also Ind. Code § 34-47-3-1 ("A person who is guilty of any willful disobedience of any process, or any [court] order . . . is guilty of an indirect contempt of the court that issued the process or order.").

Father filed a petition for contempt, alleging that Mother unilaterally made the decision to have B.L. catch the school bus at home; she failed to tell him where she and B.L. vacationed; she failed to inform him of a cavity found at one of B.L.'s dentist appointments; and Mother did not share B.L.'s emergency inhaler with him. He thus argues that Mother failed to share the responsibility and authority to make health, educational, and general welfare decisions for B.L. as required by the Agreement.

Mother ultimately made the decision for B.L. to catch the school bus at her home rather than at daycare. However, Mother's decision did not amount to contempt. E-mail messages between Parents show that they discussed plans for B.L. before school started, and Mother attempted to explain why she felt it was better for B.L. to have a parent put her on the school bus. Mother's decision to notify the school of B.L.'s bus stop location, even though different than the one Father would have preferred, was a decision required by the school, and it does not amount to willful disobedience of the Agreement. The trial court did not abuse its discretion by failing to hold Mother in contempt for making this decision.

Mother took B.L. on vacation the summer before school started without informing Father of her specific travel plans. The Agreement is silent with respect to Parents' specific

11

obligations regarding their vacation plans with B.L. However, the Agreement does provide that Indiana Parenting Time Guidelines govern parenting time during the summer. The Parenting Time Guidelines require the traveling parent to provide the other parent with a travel itinerary or contact information "whenever a child travels out of the area." Ind. Child Support Guideline 1(A)(6). Parents testified that they understood "out of the area" to mean out of state and that their practice was to inform the other parent only if they took B.L. out of state. Mother did not travel out of Indiana while on vacation with B.L., and she further testified that Parents' normal means of contact was their cellphones. Mother took her cellphone on vacation, and Father had her cellphone number. The trial court did not abuse its discretion by failing to hold Mother in contempt regarding her vacation time with B.L.

Mother took B.L. to a dentist appointment in November 2012. Father was aware of the dentist appointment and had the dentist's phone number. After the dentist appointment and while B.L. was with her, Mother sent Father a text message, stating that B.L "did a great job" at the dentist. Exhibit 11 at 1. However, Mother did not inform Father at that time that the dentist had found a small cavity because the dentist advised her not to talk about the cavity in front of B.L. Mother intended to tell Father about the cavity later but forgot and did not notify Father of the cavity until B.L. had it filled the following January. The trial court declined to hold Mother in contempt, finding that the Agreement did not require Mother to tell Father about every cavity and observing that Father could have called the dentist himself for information about the appointment but did not. Because there was no specific obligation for Mother to inform Father of this minor medical issue and because

12

forgetting something is far from being willfully disobedient, the trial court did not abuse its discretion.

Father claims Mother failed to share B.L.'s emergency inhaler with him during his parenting time with B.L. Father testified that it took two months for him to obtain an inhaler from B.L.'s doctor. However, Mother testified that B.L. was prescribed four medications when she was diagnosed with asthma, and one of those medications—albuterol—could be administered using either an inhaler or a nebulizer. Father had a nebulizer, but because it requires access to an electrical outlet, he claims it limited his parenting time with B.L. Although Father's reliance on the nebulizer may have been inconvenient, Mother explained that she told Father "I'm not going to give you the . . . inhaler right now because I don't want us to get confused." Tr. at 83. Mother did this to ensure B.L.'s health and safety. The trial court declined to hold Mother in contempt, and in doing so, it did not abuse its discretion.

### III. Attorney Fees

The trial court ordered Father to pay a total of $2,150 for Mother's attorney fees. The Indiana legislature authorized trial courts to award attorney fees in a variety of family law matters. See, e.g., Ind. Code § 31-17-4-3 (parenting time); Ind. Code § 31-16-11-1 (child support); Ind. Code § 31-15-10-1 (dissolution of marriage). Accordingly, it is within the sound discretion of the trial court to award attorney fees to one parent in a family law matter, and the decision will be reversed only upon a showing of a clear abuse of that discretion. Bean v. Bean, 902 N.E.2d 256, 266 (Ind. Ct. App. 2009).

In its February 3, 2014 order, the trial court ordered Father to pay $1,400 in attorney fees to Mother's counsel, because Father "earns $627 per week more" than Mother. App. of Appellant at 36. In its subsequent order denying Father's motion to correct error, the trial court ordered Father to pay an additional $750 in attorney fees to Mother's counsel "for the necessity of responding" to the motion to correct error. Id. at 58.[4]

Father argues that the trial court abused its discretion in ordering him to pay Mother's attorney fees, because it had no basis for doing so. However, it is well settled that "the trial court may consider the resources of the parties and their relative earning abilities" in assessing attorney fees. Holmes v. Holmes, 726 N.E.2d 1276, 1285 (Ind. Ct. App. 2000), trans. denied. We reiterate that "in a divorce case, a gross disparity of income between the parties can support an award of attorney fees to the party with lesser income available." Hedrick, 17 N.E.3d at 329.

The trial court took notice of a disparity in Parents' income. Our calculation shows that the disparity exceeds $2,500 per month. This difference—after only one month—is more than all of Mother's attorney fees combined. Based on the foregoing, the court decided that ordering Father to pay attorney fees was appropriate. The record supports this decision, and the trial court did not abuse its discretion.

Conclusion

---

[4] Father argues that the trial court's order requiring him to pay additional attorney fees somehow violates his right to file a motion to correct error under Indiana Trial Rule 59. We note, however, that Father's right to file a motion to correct error in no way prohibits the court from ordering him to pay attorney fees. Father's rights have not been violated.

14

Concluding the trial court did not abuse its discretion in modifying Father's parenting time, denying Father's petition to modify child support, denying Father's petition for contempt, and ordering Father to pay Mother's attorney fees, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.