# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**ADAM MUELLER**
**JAMIE WILKINS**
Indiana Legal Services, Inc.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT O. HEDRICK, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  47A01-1401-DR-1 |
| | ) | |
| ANGELA R. GILBERT, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable Andrea K. McCord, Judge
Cause No. 47C01-0007-DR-713

**September 9, 2014**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Robert Hedrick appeals from the trial court's order, which: (1) declined to modify Hedrick's original child support agreement with his ex-wife, Angela Gilbert, which provided that they would each bear 50% of the cost of their child's postsecondary educational expenses, (2) found Hedrick in contempt and issued a sanction as a result, and (3) required Hedrick to pay a portion of Gilbert's attorney fees. Gilbert filed a motion to dismiss the appeal, arguing that it was untimely filed. Finding that the appeal was timely filed, that the trial court did not abuse its discretion in denying Hedrick's petition to modify the original child support agreement or in finding Hedrick in contempt for failing to comply with that original order, and that the trial court erroneously entered an attorney fee award against Hedrick, we affirm in part and reverse in part.

## FACTS

Hedrick and Gilbert were married in the early 1990s. Their son, B.H., was born on January 19, 1994. On July 24, 2000, Gilbert filed a petition for dissolution of the marriage, and the trial court entered a dissolution decree on December 6, 2000. The decree incorporated a separate "Contract and Agreement," the terms of which had been agreed to by the parties. Among other things, Hedrick agreed to pay child support in the amount of $71.00 per week, and Hedrick and Gilbert each agreed to pay 50% of B.H.'s future college education expenses. Appellant's App. p. 14-15. At some point in 2003, Gilbert filed a petition to modify the agreement, which was granted in part by the trial court on December 2, 2003. In relevant part, the order modified the amount of Hedrick's child support obligation to $81.00 per week.

2

On August 5, 2011, Hedrick filed a petition to modify his child support obligation[1], and on August 17, 2011, Gilbert also filed a petition to modify. The basis for Hedrick's request was his position that "[t]he gross weekly income of both parents has changed substantially since 2003." Id. at 24. Gilbert requested that either the court enter an order "regarding the payment of college expenses for" B.H., or enter an order that Hedrick's "child support obligation should continue until the minor child completes school." Id. at 29. On October 3, 2011, Gilbert filed a request for attorney fees and a request that the trial court find Hedrick in contempt based on his failure to pay 50% of B.H.'s college expenses as ordered by the trial court in the dissolution decree.

Following an unsuccessful mediation, the trial court held hearings on the petitions to modify on December 20, 2012, February 11, 2013, and August 14, 2013. At the hearings, evidence was presented to the trial court establishing that Hedrick has worked at Burger King for the past twenty-six years as a cook. At the time of the hearings, Hedrick's rate of pay was $9.41 per hour, and his weekly work hours had recently been cut from forty to thirty-two. He lives with his parents in their three-bedroom trailer and helps to care for his elderly mother, who has had two strokes and is bedridden. Hedrick was fully up-to-date on child support at the time it was terminated by the trial court.

Following the divorce, Gilbert remarried. She is a Licensed Practical Nurse, and at the time of the hearing she worked between fifteen and seventeen hours a week, with a base pay of $20.59 per hour. In the past, she worked part-time because B.H. had health

---

[1] On January 10, 2013, the trial court entered an order terminating Hedrick's child support obligation, because B.H. had turned nineteen years old.

issues and her elderly parents needed assistance. At the time of the hearing, those issues had been remedied. She testified that she works part-time for "personal and family reasons." Tr. p. 97. If Gilbert were to find full-time employment with a new employer (her current employer did not have any full-time openings at the time of the hearings), she would likely start at a base rate of pay of $14 per hour. In addition to her work as an LPN, Gilbert owns a landscape business and her husband has full-time employment.

At the time of the first hearing, B.H. had just completed his first semester at Vincennes University. By the time of the final hearing, he had transferred to Ivy Tech Community College. Before attending college, B.H. had full-time employment at General Motors at an hourly rate of $9.63. While attending college, he had applied for work study positions but was on a waiting list and had not successfully obtained employment.

Following the hearings, the trial court entered an order denying Hedrick's motion and granting Gilbert's motions on October 22, 2013. Among other things, the trial court held as follows:

> 4. MODIFICATION. That Father's Petition for Modification is hereby denied in that there has not been shown a substantial and continuing change in circumstances as required by Indiana Code 31-16-8-1.
>
> 5. CONTEMPT. That Father is in contempt due to his failure to pay his portion of the college expenses for the child as previously ordered by this court. That Father shall pay $500.00 of Mother's attorney fees due to said contempt.
>
> 6. COLLEGE EXPENSES: That the parties['] decree in this matter . . . stated, "That Husband and Wife shall each assume and pay 50%

4

of all schoolbook rental and enrollment fees and college education expenses for the minor child." That since no modification of that term of the decree is warranted at this time, that term remains in effect . . . .

\*\*\*

8. ATTORNEY FEES: That Father shall pay $1,000 for Mother's attorney fees occasioned by having to litigate this lengthy action, within 180 days. Plus, the $500.00 occasioned by his contempt within an additional 180 days. . . .

Appellant's App. p. 9-10. On November 21, 2013, Gilbert filed a "Motion for Clarification" regarding the October 22 order. The trial court issued another order in response on December 9, 2013, holding as follows:

1. At the time of the order entered the child of the parties was still in college accruing financial obligations and the court did not have a final number as to the division to be made.

\*\*\*

3. [Gilbert] is to present [Hedrick] with an itemization of all bills she has currently paid and that are now due to her within 10 days of this order. [Hedrick] will have 30 days from that date to make payment arrangement for his share of the previous bills.

4. [Gilbert] is to present all future bills that she has paid for the child's education, to [Hedrick] in a timely fashion and he will have 60 days to pay those in full or 30 days to make payment arrangements with her that are acceptable to both parties.

5. All previous orders remain in full force and effect. This order is only meant to supplement and clarify those orders.

Id. at 11.

Hedrick filed a notice of appeal on January 3, 2014. On January 8, 2014, Gilbert filed a motion to dismiss the appeal, arguing that it had been untimely filed. This Court

dismissed the appeal on January 23, 2014, but then reinstated the appeal on January 29, 2014, holding in abeyance for the writing panel the issue of the timeliness of the appeal.

## DISCUSSION AND DECISION

### I. Timeliness of Appeal

The Indiana Rules of Appellate Procedure require that a party must initiate an appeal by filing a Notice of Appeal with the appellate court clerk within thirty days after entry of a final judgment. Ind. Appellate Rule 9(A). If a party files a timely motion to correct error, a Notice of Appeal must be filed within thirty days after the court's ruling on the motion is issued or within thirty days of the motion being deemed denied, whichever occurs first. App. R. 9(A)(1). The timely filing of a notice of appeal is a jurisdictional prerequisite, and failure to conform to the applicable time limits results in forfeiture of an appeal. D.C., Jr., 5 N.E.3d at 477. Jurisdiction is a question of law, which we review de novo. Young v. Estate of Sweeney, 808 N.E. 2d 1217, 1219 (Ind. Ct. App. 2004).

In this case, the trial court issued its order on October 22, 2013. Hedrick did not file his Notice of Appeal until January 3, 2014, well after the expiration of the thirty-day time limit set forth by Appellate Rule 9. Hedrick argues, however, that Gilbert's motion for clarification was tantamount to a motion to correct error, tolling the start of the clock until the trial court issued its order in response to her motion on December 9, 2013.[2]

---

[2] We note that Hedrick filed a motion to correct error on November 25, 2013. The trial court denied that motion, because it was untimely filed. See Ind. Trial Rule 59(C) (providing that a motion to correct error must be filed within thirty days of issuance of the final judgment).

We agree with Hedrick. The Indiana Trial Rules do not provide for a "motion for clarification." If we were to treat it as something other than a motion to correct error or a motion to reconsider, practitioners would have no guidance on what such a motion should be, its timelines, or its possible end results. Gilbert argues that she merely asked for certain technical clarifications regarding the timeline of payments. While that is true, nothing in the rules distinguishes a request for a technical clarification from a request for a more substantive change, and nothing in the rules provides for a motion to correct a "technical error" as opposed to a motion to correct any other error.

Gilbert emphasizes that the trial court's order that was issued in response to her motion did not make any substantive changes to the original motion; as a result, she argues that her motion should not be treated as a motion to correct error. To say that a pleading cannot be appropriately defined and labeled until after the trial court issues its order, however, would inject far too much uncertainty into the practice of law in this State.

In the end, we find that it would elevate form over substance to treat a "motion to clarify" as something other than a motion to correct error. Indiana Trial Rule 59(F) plainly states that "[a]ny modification . . . following the filing of a Motion to Correct Error shall be an appealable final judgment or order." (Emphasis added). Here, the trial court unquestionably modified its original order by adding new terms to it. Because Hedrick filed his Notice of Appeal within thirty days of the trial court's order issued in

7

response to the motion for clarification, we find that this appeal is timely and will address the issues raised herein.

## II. Postsecondary Educational Expenses

Before proceeding to the merits of the appeal, we note that Gilbert did not file an appellee's brief and is not participating in this appeal beyond her motion to dismiss discussed above. When an appellee fails to submit a brief, we do not develop arguments for him or her, and we apply a less stringent standard of review. First Response Servs., Inc. v. Cullers, 7 N.E.3d 1016, 1021 (Ind. Ct. App. 2014). We may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. Id.

Hedrick argues that the trial court erroneously denied his request to modify the parties' original child support agreement. In reviewing a trial court's order regarding a request to modify child support, we will reverse only for an abuse of discretion. Holtzleiter v. Holtzleiter, 944 N.E.2d 502, 505 (Ind. Ct. App. 2002). An abuse of discretion occurs only when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences that may be drawn therefrom. Id. This Court has acknowledged that "the importance of first-person observation and preventing disruption to the family setting justifies deference to the trial court." Id.

In relevant part, Indiana Code section 31-16-8-1(1) provides that a child support order may be modified only "upon a showing of changed circumstances so substantial

8

and continuing as to make the terms unreasonable[.]"[3]  See also Vagenas v. Vagenas, 879 N.E.2d 1155, 1159 (Ind. Ct. App. 2008) (holding that post-secondary education support orders are modified pursuant to the statute governing child support modification).  The party seeking the modification bears the burden of establishing that the statutory requirements have been met.  Holtzleiter, 944 N.E.2d at 505.

First, Hedrick argues that the trial court erred by issuing its order without requiring the parties to submit child support worksheets.  It has been established that the Indiana Child Support guidelines require a child support worksheet, and this Court has also held that a verified child support worksheet must be filed with the court when there is one child or more attending a post-secondary educational institution.  Butterfield v. Constantine, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007); Ind. Child Support Guideline 3(B).

Here, neither Hedrick nor Gilbert submitted verified child support worksheets. Moreover, Hedrick did not object to the lack of worksheets to the trial court.  While we do not condone the trial court's decision to proceed without verified child support worksheets, Hedrick's failure to produce a worksheet, his failure to object to Gilbert's lack of a worksheet, and his tacit agreement to proceed without a verified worksheet constituted a waiver of his right to appeal on this basis.  Butterfield, 864 N.E.2d at 417. That being said, we echo the Butterfield Court and caution that "we strongly discourage such a practice and urge trial courts in the exercise of their discretion to require verified

---

[3] Hedrick does not argue that the terms of Indiana Code section 31-16-8-1(2) apply to this case.

9

child support worksheets in every case. Failure to do so frustrates not only appellate review but also the goals of the child support guidelines." Id. (emphasis original).

Second, Hedrick argues that the trial court should have entered findings of fact in its order. While we agree that the better practice in cases such as these is to enter findings of fact and conclusions of law, we observe that Hedrick did not request findings of fact until the close of the hearing. Tr. p. 281; see Ind. Trial Rule 52(A) (providing that a party must file a written request for findings of fact with the court prior to the admission of evidence). Moreover, we note that this Court has found that, in denying a petition to modify child support, if the trial court issues a general judgment, we will affirm if it can be sustained on any legal theory consistent with the evidence. Holtzleiter, 944 N.E.2d at 505. Under these circumstances, we do not find that the trial court erred by neglecting to issue findings of fact.

Finally, Hedrick argues, essentially, that the evidence in the record does not support the denial of his petition to modify. As we view the record in the light most favorable to the judgment, we observe that at the time the parties entered into their original agreement, Hedrick's weekly income was $340 and Gilbert's weekly income was $428.80. Appellant's App. p. 21. At the time of the modification hearing, Hedrick's weekly income was somewhere between $383 and $405.88. Tr. Ex. E; Tr. p. 17. Gilbert was working part-time for approximately fifteen to seventeen hours per week, at an hourly rate of $20.59, for a weekly income between $308.85 and $350.03. Tr. 93-94.

10

Gilbert was attempting to find full-time employment but had been unsuccessful at the time of the hearing. Id. at 95-97.

Hedrick argues that income should be imputed to Gilbert because she is capable of working a full-time job but chooses not to. Indeed, this Court has held that the trial court "enjoys broad discretion to impute income to a parent so that the parent cannot evade a support obligation." In re Marriage of Lambert, 839 N.E.2d 708, 714 (Ind. Ct. App. 2005); see also Child Supp. G. 3(A)(3) (providing that if a parent is voluntarily underemployed, the trial court must calculate child support by determining the parent's potential income). Here, there is evidence that the reason Gilbert had stopped working full-time was to care for her aging parents and to care for a significantly ill B.H. for a lengthy period of time. While those situations had improved in the years before the modification hearing, the trial court could have found that this evidence does not demonstrate that Gilbert was voluntarily underemployed or that she was attempting to evade her support obligation. Moreover, Gilbert had looked into the possibility of working full-time with her current employer, but no full-time positions were open, and moving to a different employer would have meant a significant decrease in her hourly pay. Under these circumstances, the evidence favorable to the judgment supports the trial court's decision to refrain from imputing income to Gilbert.

Hedrick also argues that B.H. should have to shoulder more of the financial burden of college because "B.H. at age 19 already has greater earning potential than" Hedrick. Appellant's Br. p. 18. The trial court imposed a number of requirements on

11

B.H. as part of its order. Specifically, to continue receiving assistance from his parents, B.H. must: (1) apply for all available grants, scholarships, and other free financial assistance; (2) provide all of his own spending money; (3) maintain full-time student status and at least a 2.0 grade point average; (4) provide copies of his grades and school schedule to both parents; and (5) pay for his own fines or parking fees. Appellant's App. p. 10. The order also limits the parents' expenses to the equivalent cost of a State-supported school located in Indiana, and provides that the parents' obligation for college expenses is limited to four years. Id. Hedrick does not direct our attention to any authority standing for the proposition that B.H., a full-time college student, should be required to shoulder more of a financial burden than the trial court found to be reasonable. We do not find evidence in the record favorable to the judgment supporting this argument.

In the end, the income of Hedrick and Gilbert was more or less the same as it was when they entered into their original agreement. We acknowledge that there are extenuating circumstances for both individuals. But life is full of extenuating circumstances, and there were no such circumstances in this case compelling us to find that the trial court abused its discretion. As a result, we affirm the denial of Hedrick's petition to modify.

### III. Contempt and Attorney Fees

Finally, Hedrick argues that the trial court erroneously found him in contempt of court, imposed a $500 fine for the contempt, and ordered him to pay $1,000 of Gilbert's

12

attorney fees. The determination of whether a party is in contempt of court is left to the sound discretion of the trial court, and we will reverse only if it has abused its discretion. Williams v. State ex rel. Harris, 690 N.E.2d 315, 316 (Ind. Ct. App. 1997). There are two types of contempt: direct and indirect. Failure to comply with a court order constitutes indirect contempt. Id.; see also Ind. Code § 34-47-3-1. There is a specific statutory process that must be followed when indirect contempt of court is alleged, including notice and the opportunity to be heard. I.C. § 35-47-3-5. Strict compliance with the procedures may be excused "if it is clear the alleged contemnor nevertheless had clear notice of the accusations against him or her." In re Paternity of C.N.S., 901 N.E.2d 1102, 1105 (Ind. Ct. App. 2009).

In this case, Gilbert filed a "Petition for Citation" against Hedrick, which we interpret to be a request for a rule to show cause. Her petition set forth her allegation, which was, essentially, that Hedrick had failed to comply with the prior court order requiring that he pay for 50% of B.H.'s postsecondary educational expenses. Appellant's App. p. 35-36. Hedrick was afforded an opportunity to respond to these allegations during the evidentiary hearings regarding the petitions to modify and all other pending motions. At the conclusion of the hearings, the trial court found that, in fact, Hedrick had not complied with the court order. And Hedrick has never denied that, leading up to the hearings, he had failed to pay his share of B.H.'s college expenses. Under these circumstances, we find that the trial court did not abuse its discretion in finding Hedrick to be in contempt of court and imposing a $500 fee as a consequence.

13

The trial court also ordered "[t]hat [Hedrick] shall pay $1,000 for [Gilbert's] attorney fees occasioned by having to litigate this lengthy action . . . ." Id. at 10. Indiana Code section 34-52-1-1(b) provides as follows:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

In this case, the trial court made no findings that Hedrick's petition to modify was frivolous, unreasonable, or groundless, nor did it find that Hedrick's continued litigation of his claims became frivolous, unreasonable, or groundless. Likewise, there was no finding that he litigated the action in bad faith. The trial court merely found that the litigation was "lengthy," which does not meet the statutory criteria for an award of attorney fees. And indeed, while Hedrick did not ultimately prevail, we see no evidence in the record that he litigated in bad faith or in a manner that was frivolous, unreasonable, or groundless.

Additionally, we acknowledge the authority that stands for the proposition that in a divorce case, a gross disparity of income between the parties can support an award of attorney fees to the party with lesser income available. See, e.g., Tompa v. Tompa, 867 N.E.2d 158, 166 (Ind. Ct. App. 2007). In this case, however, at the time of the

14

modification hearings, there was not such a gross disparity in the income of Hedrick and Gilbert that an attorney fee order was warranted on this basis.  Consequently, we find that the award of attorney fees was erroneous and reverse the trial court's order to that extent only.

The judgment of the trial court is affirmed in part and reversed in part.

KIRSCH, J., and ROBB, J., concur.