## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Jun 21 2017, 8:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Erik H. Carter
Carter Legal Services, LLC
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Heath R. Shenefield, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Mindy E. Shenefield, <br> *Appellee-Respondent.* | June 21, 2017 <br><br> Court of Appeals Case No. <br> 85A04-1605-DR-1150 <br><br> Appeal from the Wabash Circuit Court <br><br> The Honorable Robert R. McCallen III, Judge <br><br> Trial Court Cause No. <br> 85C01-1604-DR-295 |

**Pyle, Judge.**

## Statement of the Case

[1]     Heath Shenefield ("Father") appeals the trial court's denial of his second

motion to correct error filed after the trial court issued an order dissolving his

marriage to Mindy Shenefield ("Mother"). Father specifically argues that the trial court abused its discretion in denying his second motion to correct error because the trial court's child custody order is ambiguous. Finding no abuse of discretion, we affirm the denial of Father's second motion to correct error.

We affirm.

## Issue

The sole issue for our review is whether the trial court abused its discretion in denying Father's second motion to correct error.

## Facts

Mother and Father were married in January 2012. They have two children, a son, H.S., who was born in November 2011, and a daughter, M.S., who was born in December 2012. Mother and Father separated in November 2013. Father filed a dissolution petition in January 2015. In the petition, Father asked "that the care, custody, and control of the minor children be shared equally by the parties . . . ." (Father's App. 10).

In July 2015, both parents filed petitions for provisional orders regarding the custody and support of the children. The trial court held a hearing on the petitions in August 2015. Father was represented by counsel, and Mother represented herself.[1] Testimony at the hearing revealed that both parents lived

---

[1] Mother has represented herself at every hearing in this matter.

in Huntington. Father is a disabled veteran. Because he was unable to work, he took care of the children every week day while Mother worked at a local preschool. Father testified at the hearing that a "fair agreement [was] . . . [b]oth parents having a hundred and eighty nights a . . . year." (Tr. 16). He asked the trial court to designate him as the "physical custodial parent" because he spent the "majority of the time with the children." (Tr. 16). Following the hearing, the trial court issued an order that designated Mother as the custodial parent for purposes of the Indiana Parenting Time Guidelines. The trial court further ordered the parties to follow a shared parenting time schedule. Specifically, the provisional order set forth the following parenting time schedule:

   a. [Father] shall have the children every week day from 8:30 a.m. to 5:30 p.m. while [Mother] works.

   b. [Father] shall have the children every Thursday overnight.

   c. [Father] shall also have the children for alternate weekends from Friday at 8:30 a.m. until Monday at 5:30 p.m.

   d. [Mother] shall have the children during the remaining times.

(App. 15).

[5] In November 2015, Father filed a petition to enforce the provisional order and to modify physical custody wherein he argued that Mother had disregarded the provisional order regarding the parenting time schedule. Father, who also

explained that Mother had changed jobs and moved to Fort Wayne, asked the trial court to award him primary physical custody of the children.

[6] In December 2015, the trial court held a final dissolution hearing, which included a hearing on Father's petition to enforce the provisional order. Both parties agreed that the primary issues before the trial court were the custody and parenting time of the children. The parties also told the trial court that they had settled all property issues except the disposition of Father's 2001 GMC truck ("the GMC truck").

[7] At the hearing, Father asked for "full custody [of the two children] with the Parenting Time Guidelines for parents." (Tr. 77). He further testified that he had purchased the GMC truck during the course of the marriage, made payments on it during the marriage, and recently paid off the loan. He explained that Mother had had a Jeep before and during their relationship, and that she currently had a Dodge that she had purchased after their separation. Father also proposed that each parent be able to claim one child as a dependent on his or her taxes. Mother asked the trial court to continue the current custody and visitation arrangement because she thought it was best for the children to see both parents every day. Mother testified that during the course of the marriage, she had given Father money to fix the GMC truck, which they had both driven. She asked the trial court to award her 50% of the truck's value. Father did not request that the value of Mother's Jeep or Dodge be included in the distribution.

[8] On December 31, 2015, the trial court issued a final dissolution order, which concluded that the "Parties shall continue as joint legal custodians of the children, but [Father] shall be the physical custodian for parenting time and school matters." (App. 7). The trial court further concluded that the parenting time schedule set forth in the provisional agreement should continue. Lastly, the trial court concluded that the parties were allowed to provide the value of the GMC truck in writing and the court would equally divide that value between the parties.

[9] Twenty-nine days later, on January 29, 2016, Father filed a motion for clarification of the final dissolution order. Father asked the trial court to provide "[c]larification as to the school and weekly custodial arrangements for the parties" as well as divide the "truck equities of the parties with inclusion of [Mother's] vehicle into the equity calculation." (App. 22, 23).

[10] At the February 2016 hearing on Father's motion for clarification, Father explained that he was "not necessarily claiming error." (Tr. 113). Rather, according to Father, he just needed "some clarification on what was the court's intent so [he could] go forward." (Tr. 113). Father agreed that although Mother had the children for more overnights, the time that the children were with each parent was "very close to equal." (Tr. 119). The trial court explained that the "shared parenting time schedule in the provisional orders got applied to the final order." (Tr. 117). The trial court further explained that Father was the "custodial parent for the purposes of the Parenting Time Guidelines as they work in relation to the holidays. He's the parent as it relates to school so we

know where the children are going to go to school. . . . The children would attend school here . . . in Huntington district." (Tr. 120-21, 127). The trial court asked Father if he had any additional questions about the parenting time issue, and Father responded that he did not.

[11] Father also argued that the value of Mother's Jeep and Dodge had been omitted from consideration and asked the trial court to consider the value of the GMC truck as well as Mother's vehicles. Mother explained, as she had at the dissolution hearing, that she had used her money to purchase the Dodge after the parties had separated. The trial court explained that the only value it would consider was that of the GMC truck. The court further explained that after it determined that value, it would divide it equally between the parties.

[12] Following the hearing, on February 17, 2016, the trial court issued an order concluding that the "value of the [GMC truck] owned by the parties is two thousand and one dollars ($2001.00) as per documents provided by [Father]. [Father] shall pay fifty (50%) percent of this value to [Mother]." (App. 8). The trial court also concluded that "[a]ll items in the Order dated December 31, 2015 . . . shall remain the same." (App. 8).

[13] Twenty-eight days later, on March 16, 2016, Father filed a motion to reconsider and correct error wherein he argued that trial court had erred in failing to award him "physical custody of the minor children." (App. 27). Father also argued that the trial court had erred in not considering Mother's Jeep and Dodge as marital assets. The trial court held a hearing on the motions in April 2016.

Father's counsel explained that "what is needed to be further clarification on, on the custodial, custodial arrangement . . . ." (Tr. 141). The trial court explained that the December 2015 order clearly stated that the parties would have joint legal custody. The court further pointed out that the parties had discussed this very issue in the February 2016 hearing, and the trial court had explained that Father had physical custody for:

> parenting time matters and school matters . . . somebody had to be chosen for that. . . . I explained that once. We came back in, and you asked me to clarify. And I think I explained it twice. . . . You're back in here saying, Judge, we'd really like you to think it over. . . . I want to make sure we understand so that we don't have to go through this again. I thought it over. The order is going to stand that way it is because I think that's best for the children. They get to see their father a lot which is exactly what I wanted to have happen, and they get to see their mother a lot. . . . And so, I think it's clear. . . . I'[m] not going to think about it again. I've thought about it. And in this issue, I think I'm right. . . . I just don't want people walking out of here misunderstanding why I did something. I did it because I thought it was best for the kids.

(Tr. 146-47). The trial court told Father's counsel that it:

> gave . . . a very good order because it took into consideration the needs, not just the children, but of both parents. . . . I don't know how else to explain it to you. . . . I didn't think I'd get to this point, [but] file a motion for change of venue from the county. Get yourself another judge. . . . If he wishes to change all this, he may do so. . . . You may jump out of the frying pan into the fire.

(Tr. 154, 155).

Father also raised again the issue of Mother's Jeep. Mother explained as follows: "I did obtain that Jeep long before [Father], and I didn't get any money. It stopped running. The transmission went out. It was at my parents sitting dead." (Tr. 158). The trial court denied Father's motion, recused himself, and ordered the case transferred to Wabash County.[2] Father now appeals the trial court's denial of his motion to reconsider and correct error.

# Decision

At the outset, we note that Mother has failed to file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee. *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). Applying a less stringent standard of review, we may reverse the trial court if the appellant can establish *prima facie* error. *Id.*

---

[2] On April 22, 2016, Huntington Circuit Court Judge Thomas M. Hakes issued an order of recusal wherein he "recused himself as Judge in this cause of action." (App. 32). Also in this order, the trial court appointed the "honorable Robert McCallen of the Wabash Circuit Court. Upon acceptance, it is ordered that this cause of action be venued to Wabash County, Indiana." (App. 32). The Chronological Case Summary (CCS) of the Huntington Circuit Court reveals that a Wabash Circuit Court judge assumed jurisdiction of this case on April 28, 2016. Specifically, the CCS states that the "Honorable Robert R. McCallen III, of the Wabash Circuit Court enters Order accepting jurisdiction of this cause (RJO). Case is now ordered venued to Wabash County Circuit Court." Huntington Circuit Court CCS at 4. Our review of the Wabash Circuit Court CCS reveals that on May 15, 2016, Father filed a motion for a case management conference and hearing on pending matters and a motion to reconsider previous orders of the Huntington Circuit Court and to make new findings of fact and conclusions of law. The trial court scheduled a hearing on the motions. On June 2, 2016, Mother filed a motion to reset the conference and a motion for change of venue. The trial court vacated the case management conference and scheduled a hearing on July 15, 2016 on the change of venue motion. On June 8, 2016, the Notice of Completion of Clerk's record was noted on the CCS. On July 15, 2016, the trial court denied Mother's motion for change of venue after a hearing. We note that Ind. Appellate Rule 8 provides in part that this Court "acquires jurisdiction on the date of the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary. Orders issued by a trial court after this date are generally void. *Crider v. Crider*, 15 N.E.3d 1042, 1064 (Ind. Ct. App. 2014), *trans. denied*. Accordingly, the trial court did not have the authority to enter its July 2016 order.

However, we may, in our discretion, decide the case on the merits. *Kladis v. Nick's Patio, Inc.*, 735 N.E.2d 1216, 1219 (Ind. Ct. App. 2000). We exercise our discretion here to consider the merits of the issues presented in this case.

[16] We further observe that twenty-nine days after the trial court issued its final judgment, Father filed a motion for clarification of the trial court's order. However, the Indiana Trial Rules do not provide for a motion for clarification. *Hedrick v. Gilbert*, 17 N.E.3d 321, 326 (Ind. Ct. App. 2014). In the *Hedrick* case, Hedrick argued that Gilbert's motion for clarification was "tantamount to a motion to correct error." *Id.* We agreed and explained that if we were to treat a motion for clarification as something other than a motion to correct error, practitioners would have no guidance on what such a motion should be, its timelines, or its possible end result. *Id.* We further explained that although Gilbert argued that she had merely asked for certain technical clarifications, "nothing in the rules distinguishes a request for a technical clarification from a request for a more substantive change, and nothing in the rules provides for a motion to correct a 'technical error' as opposed to a motion to correct any other error." *Id.* We concluded that "it would elevate form over substance to treat a 'motion to clarify' as something other than a motion to correct error." *Id.* For these reasons, we treat Father's January 2016 motion for clarification of the final dissolution order as his first motion to correct error.

[17] In addition, we point out that twenty-eight days after the trial court issued its order in response to Father's first motion to correct error, Father filed a motion to reconsider and correct error. This Court has previously explained that a trial

court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment. *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998). A final judgment disposes of the subject matter of litigation as to the parties so far as the court in which the action is pending has the power to dispose of it. *Id.* Motions to reconsider are properly made and ruled upon before the entry of final judgment. *Id.* (citing Ind. Trial Rule 53.4(A)). After a final judgment has been entered, the issuing court retains only such continuing judgment as is permitted by the judgment itself, or as is given the court by statute or rule. *Hubbard*, 690 N.E.2d at 1221. One such rule is Trial Rule 59, which provides the trial court, on its own motion to correct error or that of any party, the ability to alter, amend, modify, or vacate its decision following the entry of final judgment. *Id.* Thus, although substantially the same as a motion to reconsider, a motion requesting the court to revisit a final judgment must be considered a motion to correct error. *Id.* We therefore treat Father's motion to reconsider and correct error as his second motion to correct error.

[18] Father now appeals the trial court's denial of this second motion to correct error. Our standard of review in such cases is well-established. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Old Utica School Preservation, Inc. v. Utica Tp.*, 7 N.E.3d 327, 330 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it or the reasonable inferences therefrom. *Id.*

[19] Father specifically argues that the trial court abused its discretion when it denied his second motion to correct error because the trial court's "order as it stands creates an ambiguity as to which parent actually has custody of the children."[3] (Father's Br. 12). According to Father, "the custody and parenting time order . . . reinforces the impression that Father is Mother's court ordered work-related daycare provider." However, our review of the trial court's orders in this case reveals no such ambiguity. Specifically, our review of these orders reveals that the trial court's provisional order designated Mother as the custodial parent for the purposes of the Indiana Parenting Time Guidelines and set forth the following shared parenting time schedule:

    a.    [Father] shall have the children every week day from 8:30 a.m. to 5:30 p.m. while [Mother] works.

    b.    [Father] shall have the children every Thursday overnight.

    c.    [Father] shall also have the children for alternate weekends from Friday at 8:30 a.m. until Monday at 5:30 p.m.

    d.    [Mother] shall have the children during the remaining times.

(App. 15).

---

[3] Father argues that the trial court also abused its discretion in denying his second motion to correct error because the court failed "to give written reasons for the deviation from the Indiana Parenting Time Guidelines." (Father's Br. at 15). Father, however, has failed to set forth any specific deviation from the guidelines.

[20] The trial court's subsequent dissolution order, which was issued after the dissolution hearing, clearly named the parents as "joint legal custodians" and Father as the "physical custodian for parenting time and school matters." (App. 7). The trial court further concluded that the parenting time schedule set forth in the provisional agreement should continue.

[21] Although this order is very clear, after it was issued, Father filed his first motion to correct error and asked the trial court to provide more clarification on it. At a hearing on Father's motion, the trial court explained that Father was the custodial parent for the purposes of the parenting time guidelines as they worked in relation to the holidays as well as the designated parent as it related to school. The trial court further explained that the parties were still to follow the parenting time schedule that was set forth in the provisional order.

[22] Although the trial court's clarification of the dissolution order is also very clear, Father filed a second motion to correct error wherein he stated that he needed further clarification on the custodial arrangement. At the hearing on that motion, the trial court explained that the dissolution order clearly stated that Mother and Father had joint legal custody. However, as the trial court had explained at the previous hearing, Father had physical custody for parenting time and school matters. The trial court pointed out that it had already twice explained the custodial and parenting time arrangements to Father and denied Father's motion.

[23] We find no ambiguity in these orders. Rather, they clearly state that Mother and Father have joint legal custody of their children and Father is the designated custodial parent for the parenting time guidelines and school matters. The trial court did abuse its discretion in denying Father's second motion to correct error to address these issues a third time.[4][5]

[24] Affirmed.

Baker, J. and Mathias, J. concur.

---

[4] We further note that we find no language in the orders implying that the trial court approached custody and parenting time issues "with an impermissible presumption of a preference for either custody to Mother or that the provisional order should be maintained as the final order." (Father's Br. at 12). To the contrary, the trial court specifically stated that it took into consideration the needs of both the children and the parents. Specifically, the trial court stated that it wanted the children to see both parents "a lot" because it felt that was what was best for them. (Tr. 146).

[5] Father also argues that the trial court erred in denying his second motion to correct error because the trial court failed to include both vehicles owned by the parties on the date of separation in the marital estate." Father's Br. 12. However, this issue is waived because Father did not raise this issue at the dissolution hearing. A party cannot raise a previously available issue for the first time in a motion to correct error. *See Chidester v. City of Hobart*, 631 N.E.2d 908, 912-13 (Ind. 1994). In addition, Father argues that the trial court erred in denying his second motion to correct error because the trial court improperly "failed to allocate the tax deductions for each child." Father's Br. 20. This issue is also waived because Father never raised it in either of his motions to correct error. Any issue not raised in the motion to correct error is deemed waived. *Krueger v. Bailey*, 406 N.E.2d 665, 670 (Ind. Ct. App. 1980).