## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 04 2020, 11:18 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Carl P. Lamb
Mathew L. Fox
Carl Lamb & Associates
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Kendra L. Gierdingen
Lisa A. Anderson
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Corissa Rose Halcomb,

*Appellant-Petitioner,*

v.

Ethan Barrow,

*Appellee-Respondent.*

June 4, 2020

Court of Appeals Case No.
19A-JP-2897

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

The Honorable Bret Raper, Commissioner

Trial Court Cause No.
53C07-1808-JP-618

**Riley, Judge.**

## STATEMENT OF THE CASE

[1]    Appellant-Petitioner, Corrisa Halcomb (Mother), appeals the trial court's Order, clarifying parenting time in favor of Appellee-Respondent, Ethan Barrow (Father).

[2]    We affirm.

## ISSUE

[3]    Mother presents two issues on appeal, which we consolidate and restate as the following single issue:  Whether the trial court erred by issuing a clarifying order as to Father's parenting time.

## FACTS AND PROCEDURAL HISTORY

[4]    The parties were never married to each other, but they have one child together, E.H.B. (Child), who was born on August 2, 2018.  On August 18, 2018, Father filed a verified petition to establish paternity, child support, custody, and parenting time.  On December 3, 2018, the parties entered into a partial dispositional order (Dispositional Order), which provided among other things, that Father was the biological parent to Child, and Father's parenting time with Child would be in accordance with the Indiana Parenting Time Guidelines (IPTG).

[5]    A final dispositional hearing was held on March 15, 2019.  At the hearing, Father requested an increase of parenting time.  Specifically, Father sought an additional overnight every week either on Friday or Saturday, and two

additional midweek visits. Mother was opposed to the change, and she argued

that Child needed to be a little bit older before having overnight parenting time

visits with Father. On April 15, 2019, the trial court granted Father's request to

additional overnight parenting time, and it entered the following pertinent

findings:

> 4. Father's request for additional parenting time is granted, and in that regard, Father's parenting time shall include overnight parenting time, beginning immediately, for one (1) twenty-four (24) hour period each week, in addition to the additional parenting time provided by the Indiana Parenting Time Guidelines, for [Child's] age. All ancillary provisions of the Indiana Parenting Time Guidelines shall apply.

> 5. Unless the parties otherwise agree, Father's overnight parenting time shall occur on alternating weeks, the first Friday/Saturday and the following week on Saturday/Sunday.

> 6. Unless otherwise agreed by the parties, holiday parenting time shall occur in accordance with the Indiana Parenting Time Guidelines, with the exception of what would be school breaks/vacations including summer break until the child attends school. Father's holiday parenting time in accordance with the Indiana Parenting Time Guidelines and shall include overnight parenting time.

(Appellant's App. Vol. II, p. 35).

[6] On October 14, 2019, Father filed a motion for rule to show cause, asserting

that Mother had denied him one of his weekly overnight visits in September.

On November 6, 2019, the trial court conducted a hearing on Father's contempt

motion against Mother. Mother's counsel explained that the parties had resolved Father's contempt motion and that as part of that resolution, Father would receive two additional four-and-a-half hour periods of parenting time stacked onto his weekly overnight twenty-four-hour parenting time with Child. The trial court inquired if there were other pending issues to be resolved, and Mother's counsel stated there were issues pertaining to Child's surname. Father's counsel then argued that it was unclear from the April 2019 Order if he was entitled to have two twenty-four-hour overnights in one week during his holiday parenting time. The trial court responded that the issue of Child's surname had been resolved and would not be readdressed. However, the trial court instructed the parties to detail the specific provisions of the April 2019 Order that needed clarification, and it further instructed the parties to submit their proposed interpretations on or before November 13, 2019. The parties timely filed their proposed interpretation. Father's submissions as to whether he was permitted to have two overnights in one week in the event of a holiday were as follows:

> 5. Father requests that the [c]ourt clarify the [April 2019] Order to specifically include a provision that provides Father's overnight holiday parenting time shall be for a period of twenty-four (24) hours.

> * * * *

> 9. Father also requests that the [c]ourt clarify the [April 2019] Order and specifically include a provision that Father may have

two consecutive overnights as a result of his regular parenting time and holiday parenting time.

* * * *

10.  For example, Father currently exercises regular parenting time on alternative Fridays and Saturdays, for one twenty-four (24) hour period.  Several holidays fall on Sundays and Mondays, and as a result of his regular parenting time plus the holiday time that Father was awarded, the [April 2019] Order should specify that Father may have two consecutive overnights when exercising his parenting time (for example, Father's regular parenting time would be on Friday-Saturday and then Father's [d]ay parenting time continue through Sunday at 5:30 p.m.).

(Appellant's App. Vol. II, pp. 48-49).  Mother's interpretation of the April 2019 Order was as follows:

3.  That pursuant to and in accordance with [the April 2019] Order, the [c]ourt awarded the Father the following parenting time:  three (3) times per week, which currently is being typically exercised as follows: - Tuesday from 5:30 p.m. until 8:30 p.m./Thursday from 5:30 pm. until 8:30 p.m./then the rotating weekend—Fri/Sat or Sat/Sun—for one twenty-four (24) hour visitation.

4.  Mother believes that Father incorrectly interprets the [April 2019] Order, to mean that Father's overnight holiday parenting time is for a period of twenty-four (24) hours, that Father's holiday parenting time is to be from 5:30 p.m. the day before the holiday until 5:30 p.m. on the holiday, and that the Father's parenting time is in addition to his regular parenting time meaning Father is permitted to have two (2) overnights in one (1) week in the event of a holiday.

* * * *

7. The minor child is currently fifteen (15) months old and based on Section II (C)(3)(B) of the IPTGs the child is in the thirteen (13) to eighteen month (18) category which states in relevant part:

> *[] (2) All scheduled holidays for eight (8) hours. The child is to be returned at least one (1) hour before evening bedtime.*
>
> *(3) Overnight if the noncustodial parent has exercised regular care responsibilities for the child but not to exceed one (1) [24-hour] period per week. []*

9. The Commentary for Section II, C of the IPTGs recognizes that issues of overnights cause for the [toddler's] wellbeing [sic], explaining:

> *Overnight contact between parents and very young children can provide opportunities for them to grow as a family. At the same time, when very young children experience sudden changes in their nighttime care routines, especially when these sudden changes include separation from the usual caretaker, they can become frightening and unhappy. Under these circumstances, they may find it difficult to relax and thrive, even when offered excellent care.*

* * * *

16. The [c]ourt's April 15, 2019 Order, is consistent with the language of Section II (C)(3)(B)(3) of the IPTGs, and Mother's position here, that Father's parenting time is not to exceed one (1) 24 hour period per week.

(Appellant's App. Vol. II, pp. 54-55). On November 18, 2019, the trial court issued a Clarification Order agreeing with Father that the April 2019 Order allows him to have two overnights in one week in the event of a holiday.

[7] Mother now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[8] The Indiana Trial Rules do not provide for a motion for clarification. *Hedrick v. Gilbert*, 17 N.E.3d 321, 326 (Ind. Ct. App. 2014). In the *Hedrick* case, Hedrick argued that Gilbert's motion for clarification was "tantamount to a motion to correct error." *Id*. We agreed and explained that if we were to treat a motion for clarification as something other than a motion to correct error, practitioners would have no guidance on what such a motion should be, its timelines, or its possible end result. *Id*. We further explained that although Gilbert argued that she had merely asked for certain technical clarifications, "nothing in the rules distinguishes a request for a technical clarification from a request for a more substantive change, and nothing in the rules provides for a motion to correct a 'technical error' as opposed to a motion to correct any other error." *Id*. We concluded that "it would elevate form over substance to treat a 'motion to clarify' as something other than a motion to correct error." *Id*. For these reasons, we treat Father's oral motion seeking clarification of the April 2019 Order as a motion to correct error.

[9] Indiana Trial Rule 59 provides that a motion to correct error must be filed no later than thirty days after entry of final judgment. An untimely motion to

correct error "renders the trial court's ruling thereon a nullity" and necessarily results in a belated Notice of Appeal. *Wyrick v. Gentry*, 796 N.E.2d 342, 345 (Ind. Ct. App. 2003). A timely Notice of Appeal is a prerequisite to our court acquiring jurisdiction over a case; therefore, if a party files an untimely motion to correct error, he forfeits his right to appeal. *B.C., Jr. v. C.A.*, 5 N.E.3d 473, 477 (Ind. Ct. App. 2014).

[10] Mother claims that Father's motion to clarify the April 2019 Order as to whether he was entitled to an additional overnight parenting time during the holiday was belatedly filed more than thirty days after final judgment. We agree with Mother's contention, however, it is also long-settled that, even after final judgment has been entered and the time to file a motion to correct error or a notice of appeal has expired, a trial court retains jurisdiction to interpret, clarify, or enforce a prior order. *DeVoe v. DeVoe*, 531 N.E.2d 1200, 1202 (Ind. Ct. App. 1988).

[11] Mother argues that the April 2019 Order was clear, and it did not need any further clarification seven months after it was issued. Contrary to her assertion, as part of the contempt proceedings against Mother after she had denied Father his weekly overnight parenting time, it became apparent that the parties had divergent interpretations of the April 2019 Order as to whether Father was permitted to have two overnights in one week in the event of a holiday.

[12] A judgment is said to be ambiguous when it would lead two reasonable persons to different conclusions as to its effect and meaning. *Gilbert v. Gilbert*, 777

N.E.2d 785, 790 (Ind. Ct. App. 2002). If a judgment is ambiguous, we determine its meaning by examining the entire judgment. *Id*. at 791. Particular words cannot be isolated from the judgment but must be considered as part of the whole. *Id*. We attempt to read the provisions of the judgment so as to render all provisions effective and not merely surplusage. *Id*. In the construction of a judgment, the reviewing court may look at the entire record, including but not limited to the complaint, findings, argument, and evidence, to ascertain its meaning and effect. *Id*. Judgments should be liberally construed so to make them serviceable and not useless. *Id.*

[13]     In its April 2019 Order, the trial court expressed that it had intended for Father to have holiday parenting time in accordance with the IPTG which would also "include overnight parenting time" during the holidays. (Appellant's App. Vol. II, p. 35). After the parties submitted their conflicting proposals as to whether Father was entitled to have two overnights in one week in the event of a holiday, the trial court issued the following Clarification Order.

> 5. Paragraph 6 [of the April 2019 Order] states:
>
> Unless otherwise agreed by the parties, holiday parenting time shall occur in accordance with the [IPTG], with the exception of what would be school breaks/vacations including summer break until the child attends school. *Father's holiday parenting time in accordance with the [IPTG] and shall include overnight parenting time.*
>
> 6. The court's intent as to Paragraph 6 is to provide Father with additional holiday parenting time than would otherwise be provided given the child's present age. Thus, to clarify: Father's

holiday parenting time shall occur in accordance with the [IPTG] for a child at least (3) years of age, but not yet five (5) years of age.

(Appellant's App. Vol. II, p. 16) (emphasis added). "It is imperative that a trial court clear up an ambiguity in the language of its judgment so that the parties may conform their conduct to that intended by the trial court." *Flynn v. Barker*, 450 N.E.2d 1008, 1009 (Ind. Ct. App. 1983), *cert. denied*, 469 U.S. 934 (1984). In this case, there can be no dispute that the intent of Paragraph 6 of the April 2019 Order was to allow Father to have two overnights in one week in the event of a holiday. The trial court's Clarification Order again explained that position, and since the trial court had jurisdiction to clarify its previous order, the trial court did not err in issuing the Clarification Order which only reiterated a similar position. Accordingly, we affirm the trial court.

## CONCLUSION

[14] Based on the foregoing, we conclude that the trial court did not abuse its discretion by issuing the Clarification Order.

[15] Affirmed.

[16] Mathias, J. and Tavitas, J. concur